Jim W. CROFFORD, Appellant,

v.

Jay S. ARMSTRONG et ux., Appellees.

No. 15688.

Court of Civil Appeals of Texas.

Dallas.

Jan. 6, 1961.

G. H. Kelsoe, Jr., Dallas, for appellant.

Clark, Reed & Clark, Ramsey Clark, Bill Clark, Dallas, for appellees.

YOUNG, Justice.

The suit of appellees was for damages under Art. 4004, Vernon's Ann.Civ.St. (Actionable Fraud) incident to a transaction involving real estate and corporate stock. On trial to jury, a verdict was rendered of $22,500 actual damages and $25,000 exemplary, which became basis of the judgment rendered. Additional to his defenses, appellant had impleaded his former wife in a cross-action, claiming right to contribution in case the alleged false representations (which he denied) were established; annd upon hearing, such cross-action was stricken; defendant duly appealing from these adverse rulings.

Other than reflected in defendant's motion for instructed verdict, no objections were made to the court's charge; the issues submitted and jury answers being now summarized: (1) that defendant Crofford represented to plaintiffs in December 1953 that the common stock of Old Line Life Insurance Company at that time had an actual value of $25 per share; (1a) that such representation was false; (1b) that when defendant made such representation he knew it was false; (1c) and intentionally made by defendant to the Armstrongs; (1d) that plaintiffs relied on said representation; (1e) which operated as a material inducement to plaintiffs to exchange their property for said stock; (2) that defendant represented to plaintiffs in December of 1953 that the Old Line Life Insurance Company was at that time one of the soundest small companies in the State of Texas; (2a) such representation being false; (2b) and known by defendant to be false; (2c) was intentionally made by defendant to plaintiffs; (2d) that plaintiffs relied on said representation; (2e) and operated as a material inducement to plaintiffs to exchange their property for said stock; (3) defendant represented to plaintiffs in December 1953 that within three to five years the stock in Old Line Life Insurance Company would be paying cash dividends of from 8 to 10% per annum; (3a) which representation by defendant was false; (3b) and known by defendant at that time to be false; (3c) was intentionally made by defendant to plaintiffs; (3d) relied on by plaintiffs; (3e) operating as a material inducement to plaintiffs to exchange their property for said stock; (4) fair and reasonable compensation to plaintiffs, if paid at this time for the actual damages sustained by them by reason of their reliance upon the representations in question was $22,500; (5) that fair and reasonable compensation to plaintiffs, if paid now in cash, as exemplary damages for defendant's said wilful representations was $25,000; (6) that the Armstrongs did not discover nor by exercise of reasonable diligence should have discovered before April 27, 1955 that the representations made by defendant Crofford were false; (7) that the stock of Old Line Life Insurance Company had no market value in December, 1953 in the State of Texas; (9) that plaintiffs became possessed of such information as would have incited an inquiry in the mind of an ordinarily prudent person to ascertain the truthfulness of the representations made by defendant to plaintiffs in June 1956; (10) that plaintiffs by use of reasonable diligence could not have ascertained the falsity of the representations made by defendant to them prior to April 27, 1955; (11) that the stock of the Old Line Life Insurance Company had no actual value in the State of Texas in December 1953.

Defendant's motion for judgment notwithstanding the jury verdict being overruled, a plaintiffs' judgment thereon was entered by the court on April 20, 1959 for "actual damages of $22,500.00 with interest thereon at 6 per cent per annum from January 5, 1954, plus $25,000.00 exemplary damages, making a total of $54,638.35, together with interest thereon at the legal rate of 6 per cent per annum from this date, * * *." In such connection defendant was adjudged a return of the 900 shares of stock originally delivered by him to plaintiffs together with an additional 1,800 shares later received by plaintiffs as a result of 3 for 1 stock split. Here it should be noted that during course of litigation, defendant had filed a cross-action impleading his former wife, Bertie Crofford, claiming right of contribution over against her of a ½ part of any judgment that might be rendered against him by reason of plaintiffs' cause of action. This cross-action was thereafter dismissed upon plaintiffs' motion; defendant duly excepting.

Defendant's points of appeal will now be noted. Error (1) in entering judgment for Appellees because the undisputed evidence shows that a written contract between the parties, inconsistent with the prior verbal agreement, was entered into

between the parties, which said contract was not attacked by the appellees in any way and thus, as a matter of law, the subsequent contract (Exhibit 5) is controlling; (2) in entering judgment for appellees in that the special issues answered by the jury are based upon an oral prior agreement which is invalid under the Statute of Frauds; (3) in awarding exemplary damages in that the same are excessive and were caused by the admission into evidence of prejudicial matters over the objections of the appellant; (4) in entering judgment for appellees in that the undisputed evidence shows the cause of action of appellees, if any, was barred by the Statute of Limitations; (5) in dismissing the cross-action of the defendant against Bertie Crofford; (6) the judgment is incorrect in that it provides for the recovery of interest contrary to the laws of the State of Texas.

■ The realty involved had earlier been disposed of by defendant, precluding any action for recission and the suit of plaintiffs was for damages, based on the misrepresentations of defendant Crofford, found by the jury as made in the latter part of December 1953; in consequence of which they had sold to him their 9 acres of improved land for $25,000—$2,500 cash and 900 shares of Old Line Life Insurance Company stock (of which defendant Crofford was President) valued at $25 per share; plaintiffs later, on December 30, 1953, signing a contract of sale reciting a consideration of $7,100 cash ($6,100 for the realty and $1,000 for furniture) followed by deed of January 3, 1954 reciting a cash consideration of $6,100. Appellant did not plead this contract of sale as a waiver of plaintiffs' right to sue on basis of the prior oral representations, but such is the substance of his point 1; here arguing that the later inconsistent sales contract

concededly entered into without being attacked for fraud, becomes "the binding agreement upon the parties as a matter of law and supersedes the verbal agreement." [1] While there may be a waiver of the right to sue for damages on account of fraud, such will result only when the defrauded party, with full knowledge of the imposition practiced, enters into and executes the new agreement by which the rights of the parties are adjudicated. The rule of waiver does not apply when it appears that at time of the new agreement the complaining party had not discovered that he had been deceived. 20–A Tex.Jur. p. 150, § 84. And here, according to the jury, plaintiffs did not discover the untruthfulness of defendant's representations until June 1956. Point 1 is overruled.

■ Nor is point 2 sustainable, charging invalidity of prior oral agreement under the Statute of Frauds; plaintiffs' suit not relating to any interest in realty. To the contrary of appellant's contention, the instant facts as found by the jury would appear to be a classic background for application of Art. 4004, V.A.C.S. (False Representations in connection with a transaction in real estate). See Powell v. Andrews, Tex.Civ.App., 220 S.W.2d 718, 720; involving oral representations made prior to execution of written lease. In discussing Art. 4004, the Texarkana Court there held in part: " * * * it is firmly established in the law of this State that fraud inducing the execution of a contract in real estate is actionable, whether based upon present or past existing facts or upon false promise to do some act in the future, and but for which a party would not have entered into the contract. In the last case cited (Sibley v. Southland Life Ins. Co., Tex.Sup., 36 S.W.2d 145). The action was based upon fraud in the exchange of land, and was

1. The Armstrongs sought to testify at the trial that the inconsistencies of contract of sale and deed with respect to consideration was due to insistence and request of defendant at the title company office on closing of deal, but objections thereto were sustained by the court. In view of the contemporaneous fraudulent representations as found by the jury, such testimony should have been received.

brought under the statute. It was there contended, among other things, that the promise being oral, it was not enforcible. The court stated that: 'Considered in a contractual aspect, his promise would probably be subject to the rule invoked. But * * * the cause of action growing out of such promise, which the insurance company asserts herein, is grounded in tort and not in contract. Responsibility for the tort committed is not affected by the fact that the false promise was made orally.' "

■ Point 3 complains of excessiveness in amount of exemplary damages due to admission of remote but highly prejudicial evidence over objection. The testimony complained of is that of two former employees of the Old Line Life Insurance Company; being Mary Louise Cornell, employed from February 1952 through September of that year; then resuming employment July 1956 to October 28, same year; and Mary Alexander, employed first from January 1951 to April 1953; resuming employment in June 1954 to March of 1956. Such testimony came principally from Miss. Cornell; in effect that she was under direct supervision of Crofford during her employment; that he took the proceeds from sales of common stock of Old Line Life to finance the operation and accumulation of premium income in a separate and mutual company over which he held a management contract; telling this witness on numerous occasions that such was defendant's plan; that is, for all expenses of the mutual company to be paid and were paid by Old Line Life. More specially, witness Cornell testified that Old Line Life provided quarters, rent free to the mutual company, paid its telephone bills, purchased its office supplies, equipment, etc.; that applications for insurance received by Old Line Life were placed instead in the mutual and mutual policies issued. Miss Alexander also testified that some of the expenses of the mutual company were paid for by Old Line Life.

Defendant Crofford testified by deposition and we are cited to no statements by him or in his behalf contradictory or in denial of above testimony of these plaintiff witnesses. Main objections of appellant thereto are that same are too remote, having no bearing on the issues submitted or status of the parties on the material date of about January 1, 1954. Generally, the testimony above narrated has to do with defendant's method of operating the company, the value of whose stock is in question. In the same connection Mr. Reed, a duly qualified certified public accountant, testifying for plaintiffs, had theretofore stated that according to annual reports of conditions of Old Line Life Insurance Company made by appellant to the Insurance Commissioner of State of Texas, the following increasing losses from operations were shown, viz.: $14,000 in 1951 (year of incorporation); $98,000 in 1952; $108,-000 in 1953 and $127,000 in 1954; the book value of its stock as of December 31, 1953 being between .72¢ and $1.23 per share. A real estate witness testified that the Home office of the company (3301 Worth Street) carried on the books at $213,000 had a fair market value in 1954 of only $60,000. The nature of this litigation considered, appellant's point must be overruled. "There being an issue of fraud present, all testimony having any reasonable bearing upon that issue is admissible and may be considered by the jury in reaching a verdict. Fraud may be proved directly or by circumstances. From its very nature, it is usually impossible to prove fraud by direct and positive evidence, and for this reason a large latitude is permitted in the admission of evidence on such an issue. Evidence of facts not themselves directly in issue is admissible where such facts are relevant to the fact in issue. Such facts may be in time remote from the principal fact, but when taken together and connected with other facts, they may form links in an unbroken chain of circumstances extending back to the time of the occurrence of the main fact and establish its existence by showing that each link in the chain of facts extending from it was but the sequence of

which it was the parent or proximate cause." 20–A Tex.Jur. pp. 216–217, § 115.

■ It is asserted that the cause of action of plaintiffs is barred by the two-year statute of limitations under the undisputed evidence. These are the facts to which appellant has reference: During course of trial appellees had testified to statements made by defendant to effect that they could borrow up to $20 per share at any bank by placing Old Line Life stock up as security for a loan desired in construction of a new home. In early 1954, on going to a bank, plaintiffs were told by an officer that banks do not loan money over long periods on any common stocks. Naturally, as appellees observed, this did not reflect on *value* of the stock in question any more than on "blue chip" stocks; for example, that of A. T. & T. Stock or Du Pont. Appellees continued to receive letters and assurance from defendant, attending stockholder's meetings; not discovering the falsity of representations they claimed, until after defendant had ceased to be president or before June of 1956. The jury finding to such effect is well supported by the 738-page record.

■ Appellant's point 5, restated, complains of the trial court's dismissal of his cross-action against Bertie Crofford, his former wife, for contribution, such dismissal being without prejudice. It is not claimed that Mrs. Crofford participated in the representations allegedly made by defendant, and the joinder sought by him is on grounds aside from Art. 4004. No leave of court was obtained as required by Rule 38(a), Texas Rules of Civil Procedure, in bringing in this third party and the joinder sought was obviously in interest of defendant alone. A broad discretion is involved in the court's action, one way or the other, in such matters of procedure; Hamilton v. Hamilton, Tex.Sup., 280 S.W.2d 588; and without further discussion the point will be overruled.

■ Appellant cites no cases for the proposition that interest cannot be recovered from date of loss in cases arising under Art. 4004; providing as it does that "all persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered * * *." Manifestly the actual value of the 9-acre improved plot was fixed by the jury at $22,500; and appellees have lost the use of that amount of money from the day they parted with their home until the day the sum may be recovered. As appellees remark "to deny them interest on this value from date of the fraud until date of judgment would clearly deny them just compensation for their loss." Such additional recovery was pled by plaintiffs and allowed in the court's judgment; and is sustainable under the rule first announced in the Supreme Court case of Watkins v. Junker, 40 S.W. 11, and reiterated in many later decisions that where the damages, either ex contractu or ex delicto, are complete at a definite time, and the amount is determinable by fixed rules of evidence and known standards of value, interest is recoverable as a matter of law from the date of accrual of the cause of action. See for example, Ricks v. Culp, Tex.Civ.App., 206 S.W.2d 285; Dale Truck Lines v. R & M Well Servicing, etc., Tex.Civ.App., 286 S.W.2d 446; Texas Company v. State, Tex.Sup., 281 S.W.2d 83–89.

■ Likewise, we must overrule the further contention that interest may not be assessed upon an exemplary damage recovery, even after judgment. 25 Tex.Jur. § 17, p. 23 is cited stating that no interest can be recovered on penalties in the absence of statutory authority, and a judgment for a penalty will not bear interest. Art. 5072, V.A.C.S. provides in part: "All judgments of the courts of this State shall bear interest at the rate of six per cent per annum from and after the date of judgment * * *". While some courts have held that judgments for penalties do not bear interest, it is stated in 32 Tex.Jur. § 17 (Interest) p. 768, "the better reasoning appears to be that, unlike a fine, a judgment for penalty is a judgment in a civil

action and is subject to the ordinary rule that civil judgments carry interest." Quite analogous to the instant situation is Baum v. Daniels, 55 Tex.Civ.App. 273, 118 S.W. 754, 757, a suit for recovery of usurious interest and hence punitive. It was there held in such connection: "Notwithstanding the fact that the penalties generally have for their purpose the infliction of some punishment upon the wrongdoer, still an action for its recovery is a civil suit, and the judgment rendered is a civil recovery, and not a conviction for a crime. In the civil action for a penalty punishment of the offender is not the sole object sought to be accomplished. Compensation to an aggrieved party may, and does frequently, form a part of the purpose of the statute. For that reason judgments rendered in such cases fall within the class of those upon which the statute allows interest."

The judgment under review will be in all respects affirmed.