[No. 17228. Department One. October 5, 1922.]

JOHN DINGLE *et al., Appellants,* v. AI CAMP *et al.,*
*Respondents.*[1]

CORPORATIONS (61)—GUARANTY (9)—SALE OF STOCK—SCOPE OF
CONTRACT—DEBTS AND CREDITS. Where the sellers of all the corporate
stock of a corporation guaranteed that its indebtedness and ac-
counts receivable were as shown by the books, the buyers are en-
titled to a credit for the amount of bills receivable shown on the
books, which were wiped out by offsets not shown on the books.

SAME (61). A personal property tax assessed against a corpora-
tion is a liability, within the meaning of a contract of sale of all its
capital stock guaranteeing that its accounts payable were as shown
by the books, in view of Rem. Comp. Stat., § 11272, making personal
property taxes a lien from the date of the assessment.

SAME (61). The amount of back income taxes due to the govern-
ment for past years, is a "debt" of the corporation, within the spirit
of a contract of sale of all its stock guaranteeing the amount of its
accounts payable.

JOINT ADVENTURES (1)—RIGHTS AND LIABILITIES OF PARTIES—
MODIFICATION OF CONTRACT. Where two of three joint adventurers,
after signing a contract for the purchase of corporate stock, orally
agreed with their vendor to a modification, allowing payment of
salaries from cash on hand, and later the third signed the writing,
and did not promptly repudiate the oral agreement, they are all
bound thereby, on the theory of ratification, and the general power
of each of several joint adventurers to bind the others in matters
strictly within the scope of the joint enterprise.

Appeal by plaintiffs from a judgment of the superior
court for Whitman county, McCroskey, J., entered De-
cember 20, 1921, upon findings favorable to defendants,
in an action on contract, tried to the court. Remanded
for further proceedings.

*Hanna, Miller & Hanna,* for appellants.

*H. J. Welty,* for respondents.

TOLMAN, J.—In August, 1919, appellants, being then
the owners or in control of all of the capital stock of

[1]Reported in 209 Pac. 853.

the Endicott Hardware Company, a corporation, entered into a contract to sell all of such stock to respondents. A written agreement evidencing the terms of the sale was executed, which, among other things, provides that the vendors guarantee that the bills and accounts receivable of the corporation amount to $56,059.05; "that the indebtedness of said corporation in the nature of bills payable and accounts payable, or in any other way, does not exceed the full sum of $40,704.39, and are accurate and correct, as shown by the books of the corporation, within the limitation of $500 for errors." The stock was assigned and delivered; respondents assumed the management of the corporation and made all the payments upon the purchase price specified in the contract, except a portion of the final payment due December 1, 1919. Appellants brought this action to recover $5,505.21, claimed to be the balance of the purchase price, and respondents defended and counterclaimed upon the theory that, by reason of the bills and accounts receivable being less and the liabilities being greater than the amounts specified in the contract, not only was there nothing due to appellants, but that there was due to respondents, under the guarantees referred to, upwards of $2,000 and interest. The case was tried to the court without a jury, resulting in a judgment in favor of appellants for $475, from which judgment they have appealed.

It is first urged that the trial court erred in finding that certain accounts receivable in the sum of $180.91, shown on the books, to which offsets to the full amount, not shown by the books, were claimed and established, could be claimed by respondents under the guarantees of the contract. It is self evident that these accounts receivable were wiped out by the (to respondents) unknown offsets, and the total of the accounts receivable

thus reduced in that amount. Therefore respondents were entitled to credit to that extent. It seems to be argued that the effect of these findings was to give a double credit, first, for the amount that the assets of the corporation were thereby reduced, and second, for the amount that the liabilities were thereby increased. There is nothing in the findings to indicate that any such erroneous result was carried into the judgment, and we cannot assume error was thus committed.

The next assignment of error involves personal property taxes for the year 1919. The assessment was made presumably as of March 1, 1919, and our statute, Rem. Compiled Stat., § 11272, makes the tax a lien from the date of the assessment. The sale was made August 28, 1919, after the lien had thus accrued. Under the statute and the authority of *Puget Sound Power & Light Co. v. Seattle,* 117 Wash. 351, 201 Pac. 449, we must hold that this tax was a liability of the corporation within the meaning of the contract.

After purchasing the capital stock, respondents employed an expert to audit the books of the corporation. He discovered certain matters which were called to the attention of the national internal revenue officials, resulting in the corporation being obliged to pay nearly $3,000 in income taxes for the years 1916, 1917 and 1918. The trial court allowed this payment as a credit to respondents, and that ruling is assigned as error.

Appellants contend that this income tax was not a debt or indebtedness of the corporation within the terms or spirit of the contract. If the technical definition of the term "debt" as used by Blackstone is to govern, there are not wanting authorities which hold that taxes are not debts; but we think, under the modern use of the term, and within the spirit of the contract under consideration, the corporation was indebted

to the government in the sum thus paid. *United States v. Chamberlin,* 219 U. S. 250; *The Dollar Savings Bank v. United States,* 86 U. S. 227, 22 Law Ed. 80; *United States v. Minneapolis Threshing Mach. Co.,* 229 Fed. 1019. See, also, *Bronson v. Syverson,* 88 Wash. 264, 152 Pac. 1039, Ann. Cas. 1917D 883, L. R. A. 1916B 993; and *Pacific Power & Light Co. v. White,* 96 Wash. 18, 164 Pac. 602, Ann. Cas. 1918B 125.

It is finally contended that the court erred in refusing to sanction the payment of salaries of the employees of the corporation out of the funds in bank at the time the contract was made. The contract does not make mention of the money in bank to the credit of the corporation, or make any guarantees with reference thereto. There was evidence admitted, but afterwards stricken, to the effect that when the transaction was nearing completion, and after the contract had been signed by appellants and by respondents Helm and Babcock, but not by respondent Camp, he not being present, the question of salaries due employees arose, and that Mr. Helm then said: "There is plenty of money in the bank to pay it up. Why just go ahead and make out the checks for it and get that out of the way." This testimony seems to have been held incompetent upon the theory that the contract was not then signed by Camp, did not become effective until so signed, and therefore the oral agreement, if there was one, was made before the written contract, and was superseded by the written contract. While respondents were not partners, they were engaged in a joint venture, and two had signed the written instrument in the belief that the third would sign or acquiesce therein, which he afterwards did. Under this state of facts, we think, in the interest of substantial justice, it should be held that the respondents present and who did sign

had power to make an agreement modifying the contract, which would be binding upon the absent joint adventurer.

"As a general rule, each one of several joint adventurers has power to bind the others in matters which are strictly within the scope of the joint enterprise. . . . A joint adventurer can of course bind his associates in a matter respecting which express or apparent authority is given. On principles similar to those by which one joint adventurer is bound by the acts of another, knowledge of one coadventurer within the scope of the common enterprise is the knowledge of all." 15 R. C. L. 505.

In the absence of a prompt repudiation by respondent Camp, under the facts here shown, we think he should be held to be bound by any modifying agreement made by his coadventurers.

The item here involved is said to amount to $550, but we cannot direct that the judgment be increased by that amount, as by reason of the striking of the testimony, respondents made no attempt to meet it, and they may be in position to prove that no such conversation took place.

The cause will be remanded that the trial court may hear the evidence of both parties on this issue.

Appellants will recover their costs here.

PARKER, C. J., FULLERTON, MITCHELL, and BRIDGES, JJ., concur.