F. H. WOODRUFF & SONS, Inc.,
Appellant and Appellee,

v.

C. P. BROWN, Appellee and Appellant.

C. P. BROWN, Appellee and Appellant,

v.

F. H. WOODRUFF & SONS, Inc.,
Appellant and Appellee.

No. 16952.

United States Court of Appeals
Fifth Circuit.

June 9, 1958.

Rehearing Denied July 9, 1958.

Eugene T. Edwards, El Paso, Tex., for appellant.

Ellis O. Mayfield, El Paso, Tex., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

C. P. Brown, a farmer, sued F. H. Woodruff & Sons, in the seed business, to recover damages for fraud. Brown claimed that on the misrepresentation of the defendant that it grew sweet Spanish onion seed he was induced to purchase 100 pounds of the seed. The onion seed turned out to be the Texas Grano variety, unsuitable for January planting, when Brown planted it.

The district court overruled Woodruff's motion for a directed verdict and for a judgment non obstante veredicto. The jury brought in a verdict for Brown who was awarded a judgment in the amount of $6,083.54 plus 6% interest per annum from the date of judgment. Woodruff appealed, contending that as a matter of law the plaintiff could not recover in excess of $355, the purchase price of the seeds. Brown filed a cross appeal on the ground that interest on the judgment should commence to run from the date the cause of action accrued, not

from the date of the judgment. Jurisdiction is based on diversity of citizenship.

Onion seeds look alike. It is impossible to tell by looking at the seed what variety is planted, until the crop comes up. It is better therefore for a farmer to buy from a grower who knows his onions than to buy from a seed dealer.

Woodruff is primarily a seed dealer, but maintains seed growing stations in different sections of the country. Brown had dealt with Woodruff prior to the transaction in question in its capacity as a seed grower; he had purchased some "A-36 Type Lettuce" seed and had a successful crop. Some time before the transaction in question, Glenn Smith, one of Woodruff's salesmen, visited Brown, and showed him the Market Growers Journal, a publication in which Woodruff advertised certain seeds and also advertised the fact that it had *growing* stations. Smith represented that Woodruff *grew* the variety of onion seed Brown wanted. In reliance on this representation, December 10, 1954, Brown entered into a written contract with Woodruff to purchase 100 pounds of sweet Spanish onion seeds of the Utah strain for $355. Brown insists that he would not have entered into the contract, if he had known that Woodruff was not the grower of the seed; he would have purchased his seed from dealers in El Paso whom he knew and trusted.

Actually, Woodruff did not grow onion seeds. And, there is evidence that Woodruff's agent, Smith, knew of this at the time he represented the fact to the contrary to Brown. Woodruff bought onion seeds grown by the Dessert Seed Company. Woodruff removed the seed from the Dessert bags and transferred the seeds to bags identified by the tag "F. H. Woodruff & Sons, F. H. Woodruff seeds". The California branch manager testified that all identification showing that the Dessert Seed Company was the grower was removed because Woodruff "did not want the customer to know the source of supply". The seeds purchased from Dessert were not grown at Woodruff's request or as Woodruff's agent; they were purchased in the ordinary course of business.

By a mistake, instead of shipping sweet Spanish onion seeds to Brown, Woodruff shipped Texas Grano onion seeds. There was nothing wrong with the seeds—for what they were. They were just not meant to be planted in January and to grow in hot weather. Brown's Texas Grano onions turned out to be a crop failure.

We think, as a matter of law, that there was ample evidence for the case to go to the jury on the issue of fraudulent misrepresentation. Woodruff's defense rests on the language of the contract in the light of Pyle v. Eastern Seed Co., 1946, 145 Tex. 385, 198 S.W.2d 562, 566.

Superficially there is a resemblance between this case and the Pyle case: both involve delivery of the wrong variety of onion seed. In each contract there was a broad non warranty clause.[1] But in the Pyle case, although fraud was alleged, the crux of the decision was that the seed delivered was not in accordance with the contract. As pointed out in the dissent: "So it appears from the evidence that the case was not tried as a fraud case in which fraud sounding in deceit was re-

---

1. The non-warranty clause in the Pyle case provided:

   "Eastern Seed Co. gives no warranty, express or implied, as to description, purity, productivity, or any other matter of any seed we may send out, and we will not be in any way responsible for the crop."

   The non-warranty clause in the contract between Brown and Woodruff did not absolve Woodruff from all responsibility as in the Pyle case:

   "Except as herein otherwise expressly provided, the seller, F. H. Woodruff & Sons, Inc., warrants to the extent of the purchase price that seeds or bulbs sold are as described on the container, within recognized tolerances. Seller gives no further warranty, express or implied." In neither instance does the non-warranty clause touch upon who grew the seeds in question.

lied upon, or as a case in which accident or mistake was alleged; but was tried as a breach of contract suit with Pyle believing and relying upon the company's representation." Here the suit is in tort, the case was tried as a fraud case, and the crux of the case is the misrepresentation that Woodruff was a *grower*. Had Brown based his suit on failure of Woodruff to comply with the terms of a future contract for delivery of a particular variety of onion, the non warranty clause might have been applicable, as it was in the Pyle case. Instead, he based his action on a fraudulent misrepresentation of a present, existing fact—that Woodruff *grew* sweet Spanish onion. The warranty clause in the contract before us provides no escape from the consequences of this deceit.

We hold therefore that on the record, as a matter of law, there was sufficient evidence of fraudulent misrepresentation for the case to go to the jury. Further, under Texas law, Brown's recovery is not limited to the purchase price of the seeds; he may recover the full amount of his damages. DeKalb Hybrid Seed Co. v. Agee, Tex.Civ.App.1956, 293 S.W.2d 64,[2] 67.

Brown cannot prevail on his cross appeal. Interest on the judgment commences to run from the date of the judgment.[3]

The judgment is

Affirmed.

2. Woodruff's contract limited damages to the purchase price, as did the contract in the DeKalb case. The Court in the DeKalb case said:

"* * * the appellee's measure of damages is not limited to the purchase price of the chicks as was written in the contract of sale, but * * * he could recover his damages arising naturally from the act of the appellant in shipping him diseased chicks after representing that they would be healthy."

3. Vernon's Civil Statutes of Texas, Article 5072 provides:

"All judgments of the courts of this State shall bear interest at the rate of six per cent per annum from and after the date of the judgment, except where the contract upon which the judgment is founded bears a specified interest greater than six per cent per annum and not exceeding ten per cent per annum, in which case the judgment shall bear the same rate of interest specified in such contract and after the date of such judgment."

It is Brown's contention that interest should run from the date his cause of action accrued. He cites many cases involving trespass to land, or damage to crops. In all of these the defendant's liability became fixed on some definite date. Such is not the case, here, and therefore interest will run from the date of the judgment. See State v. Griffis, Tex.Civ.App.1957, 300 S.W.2d 220.