**Clarence L. CAGLE, Appellant,**

**v.**

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee.**

**No. 16584.**

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 18, 1964.

Rehearing Denied Jan. 22, 1965.

John W. Herrick and Massie Tillman, Fort Worth, for appellant.

Brown, Day & Crowley and M. Hendricks Brown, Fort Worth, for appellee.

MASSEY, Chief Justice.

Workmen's Compensation Case. Clarence L. Cagle, the employee, obtained answers to special issues by the jury which found that on or about February 17, 1962, he sustained an accidental injury resulting in permanent total disability having its inception at such time. His employer's insurance carrier was the defendant United States Fidelity and Guaranty Company. An amount was found as an average weekly wage, based upon which said employee's compensation rate was computable. In other answers the jury found that the total disability of said employee was not solely caused by a prior injury he had experi-

enced on August 29, 1961, and the treatment and surgery he had received on account thereof, but that said prior injury contributed to his total disability in the amount of 15%.

On January 27, 1964, the trial court rendered a judgment granting the employee $9,470.68 in compensation benefits, to be paid in a lump sum and accordingly reduced pursuant to statute. By motion and amended motion for new trial and motion for judgment notwithstanding the verdict, the court's jurisdiction was continued.

On April 2, 1964, the trial court entered an order setting aside the January 27th judgment. Finding that it should have granted the motions of the United States Fidelity and Guaranty Company for instructed verdict and to disregard findings of the jury and for judgment notwithstanding the verdict, the trial court entered judgment that the employee take nothing. In other words, the ultimate judgment was for the Insurance Company.

Therefrom the employee appealed, seeking to have the verdict of the jury sustained and judgment as first rendered reinstated through action of this appellate court reversing and rendering. The Insurance Company countered, seeking first to have us affirm the judgment, but, alternatively in the event we should reverse, to remand the cause for another trial.

We affirm the judgment.

■ Based upon the decision in Long v. Knox, 155 Tex. 581, 291 S.W.2d 292 (1956), the rule in Texas is stated to be: "A party who has made a sworn statement in the course of judicial proceedings may not be heard afterward to maintain a contrary position in the absence of proof that the averment was made inadvertently, or by mistake, fraud, or duress." 22 Tex.Jur.2d 689, "Estoppel", § 18, "Judicial estoppel".

In 11 Southwestern Law Journal 96 (1957), under the title "Procedure—Judicial Estoppel—Sworn Statements", David M. Woolley has discussed the case cited in relation to the matter of judicial estoppel along with many Tennessee cases in which the doctrine had origin. Some of these were referred to in Long v. Knox. Mr. Woolley concluded from all the opinions that application of the doctrine has been effected in conformity with its basic idea— that when a person willfully swears under oath to one thing in an attempt to gain an advantage, he will not be allowed subsequently to maintain an inconsistent position.

In 8 Baylor Law Review 41 (1956), under the title "Bars to Recovery by the Grantor of Fraudulent Conveyances in Texas", Mr. John Webb has also discussed Long v. Knox, though somewhat more narrowly—as indicated by such title.

■ Public policy has been declared and established, pursuant to the decision in Long v. Knox. It seems to us that logical application of the rule to questions of the nature of that before us would require that a court disregard evidence in the record before it, whenever it is established by undisputed evidence that such was in contradiction of a previous oath (made in the course of judicial proceedings) made in an attempt to gain an advantage in the proceedings pursuant to which it had been made.

It would not matter whether the trial court had recognized the doctrine nor even whether the doctrine had been drawn to the attention of such court. Upon discovery of the situation by an appellate court, after appeal, even independently of the litigants' points and counterpoints, the doctrine would have application which in a proper case would control its disposition. Public policy constitutes a condition of which the rules of society demand enforcement whenever and wherever requisite therefor is made to appear. See 4 C.J.S. Appeal and Error § 242, p. 748 "Limitations of, and Exceptions to, Rule (as to adherence to theory pursued below)",

subdivision on "Questions of public policy or public interest"; and 5 C.J.S. Appeal and Error § 1503, p. 872 "—Nature and Theory of Cause and Grounds of Action or Defense", sub. (b), "Limitations and Qualifications of Rule" (n. 77.5 and 77.10).

As applied to the case before us, once the doctrine is recognized and honored, the question remains: "In the test to be made of the sworn statement of the employee seeking compensation—relative to the event(s) and circumstance(s) giving rise to the disability by reason of which he claims entitlement—is same a categorical denial of his previous sworn statement of event(s) and circumstance(s) giving rise to the same disability?"

The employee sustained an injury to his back on August 29, 1961. By reason of incapacity allegedly flowing therefrom, he claimed right to compensation benefits for total and permanent disability of the Pacific Indemnity Company. By an appeal from the Industrial Accident Board, perfected in Federal Court on April 9, 1962, the pleadings filed in behalf of the employee alleged that the injury sustained on August 29, 1961 "was of such a nature that he has been rendered unable to perform the usual tasks of a working man in such a manner as to enable him to obtain or retain employment wherein he is required to perform the usual tasks of a working man, such as bending, lifting and stooping. He is, therefore, totally disabled within the meaning of the Workmen's Compensation Act of the State of Texas. This disability will be permanent." It is to be remembered that the case in which these pleadings appeared is not that from which any appeal was taken. It was finally disposed of in Federal Court ere that before us was ever filed.

On April 14, 1962, in said case, the attorney for the Pacific Indemnity Company took the employee's deposition under the Federal Rules. During the process the employee testified to the fact that he had been in an automobile collision on February 17, 1962. It was also established that at time of the automobile collision the employee was recuperating from a "disc fusion", an operation undergone to remedy the injured condition of his back caused by his injury of August 29, 1961. It was established that questions and answers incident to the taking of the deposition included the following:

Q. "Were you injured in that accident (the later automobile accident of February 17, 1962)?"

A. "No, sir. I don't know that I was. My back was hurting, wasn't hurting any worse before than it was after, only the accident did shake me up and sort of scared me."

Q. "Before you had this accident, was the pain going up to your shoulder blade?"

A. "Yes, sir."

Q. "Has it been that way all the time since the accident, since the time you got hurt in August of 1961?"

A. "Yes, sir. When I was over to see Dr. McDonald in February I told him about this up here and he said, well, don't blame, and I said, you can't blame all of that on me, he said, What I done to you, he says, you are going to feel like a mule walked up and down your back."

Q. "He felt this was just residual from the operation?"

A. "Yes, I guess."

During the course of the trial from which the instant appeal was taken, which trial began on December 4, 1963, the attorney for the United States Fidelity and Guaranty Company (appellee herein) was cross-examining the employee. It was by use of the deposition given by the employee in the case against the Pacific Indemnity Company that the testimony we have quoted was shown to have been given in that proceeding. We repeat the last question and

answer quoted in the form in which the whole answer was given upon cross-examination.

Q. "Then the question was, 'He felt this was just residual from the operation,' and you said, 'Yes, I guess.' That was the position you were taking in April of 1962, wasn't it?"

A. "Yes, sir."

Further evidence in the record establishes that shortly after the Pacific Indemnity Company took his deposition (in April of 1962) the employee entered into and settled his claim and suit by compromise settlement. The employee then filed his claim for compensation against United States Fidelity and Guaranty Company on account of incapacity stemming from injury alleged to have been sustained on February 17, 1962, in the automobile collision. Upon denial of the claim by the Industrial Accident Board of Texas, he perfected his appeal to the District Court. There he claimed compensation for total permanent disability resultant from injury to the soft tissues in the lumbar area of his back, or in the alternative from injury which aggravated his preexisting condition so as to render him totally and permanently incapacitated.

We believe we are required to decide whether the employee's testimony presented on trial of the case (now before us on appeal) amounted to a categorical denial of his testimony in the deposition taken by Pacific Indemnity Company in the prior case. The deposition testimony of April 14, 1962 must be viewed in its proper setting. Pleadings in his suit against the Pacific Indemnity Company were not sworn pleadings, though testimony given in the deposition was sworn testimony. Such pleadings alleged total permanent disability as result of his injury in August of 1961. Therefore, when he was asked whether he had been injured in the automobile accident of February, 1962, and replied, "No, sir. I don't know that I was. My back was

hurting, wasn't hurting any worse before than it was after, only the accident did shake me up and sort of scared me", we believe he positively testified that the disability he was experiencing on date of the deposition (and which he was then claiming amounted to total permanent disability) was not the result, in any degree, of the automobile accident of February, 1962. We believe he denied that he was injured in the automobile accident in the deposition, at least to a degree which occasioned incapacity.

His subsequent testimony, pursuant to the conduct of the trial beginning December 4, 1963 (in prosecution of his suit against the United States Fidelity and Guaranty Company), was therefore contradictory and amounted to a categorical denial of the truth of his statements given in the deposition. His testimony, and those of a witness in his behalf, was to the effect that his disability, allegedly total permanent, had its origin—at least in part—in injuries flowing from the automobile accident of February, 1962. These, if any, had occurred some two months before his deposition was taken. If his deposition testimony was erroneous or explainable he did not say so. There was no proof offered to show that such deposition testimony was given inadvertently, or by mistake, fraud or duress.

■ We believe that the situation presents an occasion where the requirements of public policy demand that we honor the doctrine of judicial estoppel. To do this, we strike down the testimony of the employee and his witness to the effect that any part of his disability was caused by any injury claimed to have been sustained in the automobile accident of February, 1962. Evidence to that effect has no probative force and effect. From an evidentiary standpoint it might reasonably be argued that there was no evidence.

But for our decision that the proper determination of the case rests upon judicial estoppel, we would sustain the points of error of the employee and reverse the judg-

ment of the trial court and render judgment for him upon the jury's verdict. We find the counterpoints of the Insurance Company without merit. The trial court did not, in our opinion, rule erroneously when it permitted the testimony of Dr. McGrath,—and, with that testimony properly in the record, there was evidence of probative force and effect sufficient to support the jury's findings of injury (on February 17, 1962), and that such was a producing cause of the total permanent disability which the jury found, and which likewise has support in the evidence.

But we hold that the employee was judicially estopped to found support for his judgment in these jury's findings.

Judgment is affirmed.

RENFRO, J., dissents.

RENFRO, Justice (dissenting).

In my opinion the facts in this case are not such as to demand or warrant application of the doctrine of judicial estoppel.

I would render judgment on the verdict.