**COLONIAL REFRIGERATED TRANS-PORTATION, INC., et al., Appellants,**

v.

**George P. MITCHELL et al., Appellees.**

**George P. MITCHELL et al., Appellees,**

v.

**COLONIAL REFRIGERATED TRANS-PORTATION, INC., et al., Appellants.**

**No. 25158.**

United States Court of Appeals
Fifth Circuit.

Oct. 29, 1968.

Rehearing Denied Dec. 12, 1968.

L. Keith Simmer, Fred M. Lange, Houston, Tex., Maurice F. Bishop, Birmingham, Ala., for appellants, Colonial Refrigerated Transportation, Inc., and others; Fullbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel.

William Emerson Wright, Houston, Tex., for cross-appellants, George P. Mitchell and others; Butler, Binion, Rice, Cook & Knapp, Houston, Tex., of counsel.

Before COLEMAN and GODBOLD, Circuit Judges, and RUBIN, District Judge.

RUBIN, District Judge:

The plaintiffs filed suit in a Texas state court contending that the defendants had fraudulently deceived them. Following removal of the case to federal court and a lengthy trial, the jury found for the plaintiffs. The defendants seek a new trial, complaining that the trial court made two errors in ruling on the admissibility of evidence. The plaintiffs, in turn, cross appeal, complaining of the trial court's refusal to award them pre-judgment interest.

The appellants have not convinced us that the trial court was in error in any material respect with regard to Texas law, which is, of course, controlling, and the jury's verdict is therefore affirmed. The cross-appellants have persuaded us that pre-judgment interest is due them. Having set forth our conclusions briefly, we now elaborate on our reasons for them.

## I. THE FACTS

In 1959, Lowery and Willmott, who are not parties to the suit, learned that the defendants wanted to lease tractors and trailers to use in common carrier service. They conferred with one of the defendants, McBride, who was an officer of the corporate co-defendants.

Since Lowery and Willmott did not have enough capital to finance the purchase of the equipment, Lowery approached one of the plaintiffs, Johnny Mitchell, to interest him in financing the venture as an investor. There was evidence from which the jury could have found that McBride represented to Lowery and Willmott that the leased trucks and trailers would be used as a fleet on a fixed route between Memphis, Tennessee and Los Angeles, California, as common carriers, hauling meat products or other freight that would produce a relatively high freight rate; that he knew that Lowery and Willmott would meet with the proposed investors and convey these representations to them; and that the investment would be predicated on the likely profitability of the operation. Lowery and Willmott then met with three of the plaintiffs, George Mitchell, Johnny Mitchell and Christie. These three later invited the remaining plaintiffs, Zinn and Madden, to join in the undertaking. These five had previously engaged in various joint investments.

Madden, who had some experience in truck operation, went to Birmingham to investigate the economic feasibility of the proposal and to talk to McBride. Based on correspondence from McBride presented to the five plaintiffs by Lowery and Willmott and on the representations made to Madden by McBride and other employees of the defendant companies in Birmingham, Madden concluded that McBride had a firm arrangement to haul meat from a packing plant in Memphis to the West Coast. There was evidence sufficient to justify the jury in finding that the defendants presented information regarding the potential revenue from this operation designed to make Madden believe that the venture would be profitable to the equipment lessors. Accordingly, upon his return to Texas, he rec-

ommended the investment to his associates on the basis that the plaintiffs buy ten tractors and trailers and lease them to the defendants, together with two vehicles already owned by Lowery and Willmott, for 75% of the gross revenues. They would in turn make a profit sharing arrangement with Lowery and Willmott.

The plaintiffs decided to make the investment jointly on May 29, 1959. They thought that it would be desirable to use a corporate entity as an operating unit. Since Madden owned all of the stock of an inactive corporation named Gear, Inc., an empty corporate shell without assets, the plaintiffs decided to use it instead of forming a new corporation. This eliminated both the expense and time required to form a new corporation. Gear was therefore capitalized for $3,000 and the rest of its funds were borrowed. Gear purchased the tractors on credit, but, because it had no assets, it was necessary for the plaintiffs to endorse its notes. The trailers were also purchased on credit but the trailer notes were not endorsed.

Gear met with financial problems from the start of the new business. The defendants used the leased trucks on an individual truck dispatch basis to haul cargo on relatively short, low income trips. These were unprofitable, and the business operated at a substantial loss. The trailers were delivered late, and, when they arrived, they were defective. Eventually (after the plaintiffs were no longer stockholders), Gear sued the manufacturer of the trailers for damages, including lost profits.

The plaintiffs decided to cut their losses and to sell all of their Gear stock to Willmott. However, Gear's operations remained unprofitable. The plaintiffs were therefore called upon to honor their personal guarantees of the tractor notes. The bank that held the notes foreclosed on its mortgage on the tractors, and delivered them to the plaintiffs who eventually sold them in 1961.

This suit, filed in May, 1961, charged that Colonial Refrigerated Transport ("Colonial"), Colonial Pacific Frigidways ("C & P"), and McBride fraudulently misrepresented that the leased equipment would be used as a fleet to haul high return commodities on a regular route from Memphis to Los Angeles when in fact they intended to and did use the equipment on irregular short runs at relatively low freight rates. Plaintiffs claimed that in reliance on the defendants' representations they (1) activated and capitalized Gear, (2) caused Gear to purchase equipment and endorsed its notes, (3) caused Gear to lease the equipment to the defendants, and (4) executed personal guarantees for notes for additional capital for Gear.

The plaintiffs urged the trial judge to instruct the jury that reliance on McBride's statements by one of them would constitute reliance by all since they were engaged in a joint enterprise. He refused to give this charge. He also refused to give the defendants' requested instruction that each of the plaintiffs would have to show reliance by himself personally in order to recover. Instead he instructed the jury that the plaintiffs were engaged in a joint enterprise, and "a communication to one of the plaintiffs would, in law, constitute a communication to each of the other plaintiffs concerning matters within the scope of the joint enterprise. Therefore * * * if you find from a preponderance of the credible evidence that a representation was made by defendants to plaintiffs which contained each and all of the elements of a fraudulent representation * * * then your verdict will be for plaintiffs."

## II. JOINT ENTERPRISE

The defendants urge that the district judge's finding that the plaintiffs were engaged in a joint venture was contrary to the evidence, or that it was at least a fact issue that should have been submitted to the jury.

This suit is founded in tort.[1] The plaintiffs' complaint is that they were fraudulently misled. The evidence was uncontroverted that the plaintiffs finally decided to make their investment on May 29, 1959. The defendants' representations were made before then, at a time when Gear was an empty shell, and none of the plaintiffs except Madden had any interest in it.

The material issue then is whether, when the defendants' representations were made, the relationship among the plaintiffs was such that communication of the representations to one of them constituted communication to all. This would not, of course, be the case if they were a group of individuals acting separately. On the other hand, a representation to one might be a representation to all if the plaintiffs were partners or joint adventurers.

■ The writers agree that the joint venture is a type of partnership, not a separate kind of business unit,[2] but the concept of joint venture, or as the trial court chose to call it, joint enterprise,[3] was created by the American courts[4] to meet the need they felt for a special term to describe an enterprise undertaken jointly by several partici-pants that lacked some of the characteristics usually found in a partnership.[5] Like other American courts, Texas courts recognize the joint venture concept.[6] In Texas, as in other states, whether a joint venture exists depends upon the intention of the parties who compose it.[7] Texas considers a joint adventure "in the nature of a partnership engaged in the joint prosecution of a particular transaction for mutual profit." Brown v. Cole, 1956, 155 Tex. 624, 291 S.W.2d 704, 709, 59 A.L.R.2d 1011. See also Holcombe v. Lorino, 1935, 124 Tex. 446, 79 S.W.2d 307.[8]

■ The evidence with respect to the plaintiffs' intention and agreement before Gear was revived was uncontroverted. The inferences to be drawn from this evidence all point the same way. When the defendants' representations were made, the plaintiffs had a joint interest in seeking an investment. Before they breathed life into Gear, they had an agreement to share profits and losses; they were to have joint control of the investment although day-to-day management was to be committed to one of their group who had previously assumed such responsibility for other investments made jointly by the group.

1. There was no claim other than one based on fraudulent misrepresentation.

2. Taubman, "What Constitutes a Joint Venture" (1956), 41 Cornell L.Q. 640, 642 and authorities cited in notes 11–17 therein. "A joint adventure is but one form of partnership * * *." United States v. Wholesale Oil Co., 10 Cir., 1946, 154 F.2d 745, 747.

3. The relationship is also sometimes called joint adventure, quasi-partnership, and joint undertaking. Taubman, "What Constitutes a Joint Venture" (1956), 41 Cornell L.Q. 640, 643.

4. Comment, (1951), 25 Tul.L.Rev. 382.

5. Joring v. Harriss, 2 Cir., 1923, 292 F. 974, 978; Elsbach v. Mulligan, 1943, 58 Cal.App.2d 354, 136 P.2d 651.

6. See, e. g., Holcombe v. Lorino, 1935, 124 Tex. 446, 79 S.W.2d 307 and Griffin v. Reilly, Tex.Civ.App., 1925, 275 S.W. 242. See also the Texas cases cited in note 9 infra.

7. Luling Oil & Gas Co. v. Humble Oil & Refining Co., 1946, 144 Tex. 475, 191 S.W.2d 716, 722.

8. "A joint venture or enterprise is, in essence, an informal partnership between two or more persons for a limited undertaking or purpose." Wooten v. Marshall, S.D.N.Y.1957, 153 F.Supp. 759, 763. Quoted with approval in Backus Plywood Corp. v. Commercial Decal, Inc., S.D. N.Y., 1962, 208 F.Supp. 687, 690 and Sadwith v. Lantry, S.D.N.Y., 1963, 219 F.Supp. 171, 177. See also the cases cited in Sadwith v. Lantry, supra, and Bushman Const. Co. v. Air Force Academy Housing, Inc., 10 Cir., 1964, 327 F.2d 481; Kincade v. Jeffery-De Witt Insulator Corp., 5 Cir. 1957, 242 F.2d 328; In re Gotfried, S.D.Calif., 1942, 45 F.Supp. 939; United States Fidelity & Guar. Co. for Use of Reedy v. American Surety Co., M.D.Pa., 1938, 25 F.Supp. 280.

That their relationship among themselves was fiduciary and that they had a right to an accounting was implied. The relationship at the moment before Gear was reborn met all the requirements of a joint venture.[9]

■■ Whether or not a group of persons constitute a joint venture is usually a question of fact, to be resolved by the jury.[10] But determination of the legal consequences that flow from uncontroverted facts is a question of law to be decided by the court.[11] "It is a well established rule in the courts of the United States that where the evidence is so overwhelmingly on one side as to leave no room for doubt as to what the facts are, the court should give a peremptory instruction to the jury. Atchison, Topeka, etc. R. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720." Evans v. Teche Lines, 5 Cir. 1940, 112 F.2d 933, 934.

■ In Texas, it is the duty of a court to direct a verdict, though there is slight testimony, if its probative force is so weak that it raises only a mere surmise. If the jury could not reasonably infer the existence of a fact, and there is no room for ordinary minds to differ as to the conclusion to be drawn, the question is for the court.[12]

■ There was no evidence in this case from which the jury could properly have concluded that, at the time the defendants' representations were made and at the time the plaintiffs decided to act on them, the plaintiffs did not comprise a joint venture. The joint venturers did decide to employ a corporation as a medium for their investment. But this does not negate the existence of the joint venture at the moment the alleged tort was committed.[13]

The authorities cited by the defendants do not deal directly therefore with the issue actually involved in the court's

10. "If there is evidence sufficient to raise the issue, the existence of a joint adventure is a question for the jury." 33 Tex.Jur.2d, 304, § 12. Hamman v. United States, D.Mont.1967, 267 F.Supp. 420. See also Winn v. Ski Club Ass'n of Fellows of Mayo Foundation, D.Minn.1962, 207 F.Supp. 448; In re McAnelly's Estate, 1953, 127 Mont. 158, 258 P.2d 741, 746–747; Annot., (1942) "What Amounts to Joint Adventure," 138 A.L.R. 968, 979.

9. See the résumé of these requirements in Taubman, supra note 2, at pp. 643–49. The Texas jurisprudence is renewed in Brown v. Cole, 1956, 155 Tex. 624, 291 S.W.2d 704. Cf. Luling Oil & Gas Co. v. Humble Oil & Refining Co., 1946, 144 Tex. 475, 191 S.W.2d 716. See also Griffin v. Reilly, Tex.Civ.App., 1925, 275 S.W. 242, in which the question was submitted to the jury. See also 1 Fletcher, Private Corporations § 20 (perm. ed. 1931, 1966 Revised Edition) distinguishing co-partnerships and joint adventures from corporations. Cf. United States v. Standard Oil Co. of California, S.D.N.Y., 1957, 155 F.Supp. 121. Whether or not parties have entered into a joint venture will be ascertained from their spoken and written words and from their acts and conduct. In re Taub, 2 Cir., 1924, 4 F. 2d 993; Wooten v. Marshall, S.D.N.Y., 1957, 153 F.Supp. 759.

11. The credibility of witnesses and the weight to be given their testimony is for the jury which may exercise its independent judgment even if such testimony is uncontradicted. Sartor v. Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, rehearing denied, 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593. Thus the weight even of uncontradicted evidence and the credibility of witnesses who gave it is usually for the jury to determine. Eagan Chevrolet Co. v. Bruner, 8 Cir., 1939, 102 F.2d 373, 122 A.L.R. 987. But the court should direct a verdict when the evidence is without dispute. National Mut. Cas. Co. v. Eisenhower, 10 Cir., 1941, 116 F.2d 891.

12. See also Lincoln National Life Ins. Co. v. Roosth, 5 Cir., 1962, 306 F.2d 110, cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720; and Cobb v. American Bonding Co. of Baltimore, 5 Cir., 1941, 118 F.2d 643. Annot. (1958) "Credibility of Witness Giving Uncontradicted Testimony as Matter for Court or Jury," 62 A.L.R.2d 1191.

13. See the distinction intimated in Manacher v. Central Coal Co., 1954, 284 App. Div. 380, 131 N.Y.S.2d 671, aff'd, 1954, 308 N.Y. 784, 125 N.E.2d 431, in which the court cited and followed Jackson v. Hooper, 1910, 76 N.J.Eq. 592, 75 A. 568, 27 L.R.A.,N.S., 658 and then said:

alleged error. Instead, they deal only with the question whether a joint venture may continue to exist contemporaneously with a corporation formed to carry out its purposes.

There is authority that, when parties choose to do business as a corporation and thus gain the advantages of the corporate business form, including limited liability, they cease to be joint venturers and thereafter have only the rights, duties and obligations of stockholders.[14] These cases reason that the investors "are not at one and the same time joint venturers and stockholders, fiduciaries and nonfiduciaries, personally liable and not personally liable." [15] However, there is also persuasive and well-reasoned authority that a joint venture agreement continues in effect following the formation of a corporation created to implement it if the parties' intention to this effect is clear.[16]

Apparently, the Texas courts have never had occasion to adopt either view. The Texas Court of Civil Appeals has defined a "joint adventure" as "a special combination of two or more persons, where in some specific venture a profit is jointly sought, without any actual partnership or corporate designation." Griffin v. Reilly, Tex.Civ.App., 1925, 275 S.W. 242, 246. But this definition does not necessarily imply that formation of a corporation to carry out the purposes

"It is true that there are many decisions which upon a casual reading appear to be in conflict with this rule of law. These cases in one form or another enunciated the rule that a court of equity will intervene and grant relief where the agreement is extrinsic to the corporate entity. Relief is afforded the plaintiff not in his capacity as a stockholder but based upon an agreement derived from outside of the separate fictional existence of the corporation. Simply stated, the agreement or other factual situation upon which relief is granted runs along side of the path of the corporation. When the two merge, however, and relief is sought upon the ground that the corporation has become a mere agency or instrumentality for the performance of an independent agreement of joint adventurers or partners the aggrieved party is relegated to his rights as a stockholder and may not sue in his individual capacity." 131 N.Y.S.2d at 675–676.

14. Jackson v. Hooper, supra note 13; Seitz v. Michel, 1921, 148 Minn. 80, 181 N.W. 102, 12 A.L.R. 1060; Weisman v. Awnair Corp. of America, 1957, 3 N.Y.2d 444, 165 N.Y.S.2d 745, 144 N.E.2d 415; Loverdos v. Vomvouras, 1960, 23 Misc.2d 464, 200 N.Y.S.2d 921; Note, (1964), "Joint Venture Corporations," 78 Harv. L.Rev. 393, 397. Cf. Mills v. Mills, Ohio App., 1952, 127 N.E.2d 222.

15. Weisman v. Awnair Corp. of America, supra note 14, 165 N.Y.S.2d at 750, 144 N.E.2d at 418.

16. See the excellent discussion in O'Neal, Close Corporations, §§ 1.06 and 5.05 and the additional discussion in § 1.06 of the 1967 Cumulative Supplement to that work; and see also 8 Fletcher, Private Corporations § 3997.1 (perm. ed. 1931, 1966 Revised Edition); Broden & Scanlan, "The Legal Status of Joint Venture Corporations," (1958), 11 Vand.L.Rev. 673; Arditi v. Dubitzky, 2 Cir., 1965, 354 F.2d 483; DeBoy v. Harris, 1955, 207 Md. 212, 113 A.2d 903; Tate v. Ballard, 1954, 243 Minn. 353, 68 N.W.2d 261; Manacher v. Central Coal Co., 1954, 284 App.Div. 380, 131 N.Y.S.2d 671, aff'd, 1955, 308 N.Y. 784, 125 N.E.2d 431, noted in (1955), 55 Columbia L.Rev. 419. Cf. La Varre v. Hall, 5 Cir., 1930, 42 F.2d 65; United States v. Standard Oil Co. of California, S.D.N.Y.1957, 155 F. Supp. 121, 148 (and cases cited therein) and Morrison v. Caspersen, 1959, Mo.Sup. Ct., 323 S.W.2d 697. See also Beardsley v. Beardsley, 1891, 138 U.S. 262, 11 S.Ct. 318, 34 L.Ed. 928; Wabash Ry. Co. v. American Refrigerator Transit Co., 8 Cir., 1925, 7 F.2d 335, cert. denied, 1926, 270 U.S. 643, 46 S.Ct. 208, 70 L.Ed. 776; Elsbach v. Mulligan, 1943, 58 Cal.App.2d 354, 136 P.2d 651; Hladovec v. Paul, 1906, 222 Ill. 254, 78 N.E. 619; Mendelsohn v. Leather Mfg. Corp., 1950, 326 Mass. 226, 93 N.E.2d 537; Hathaway v. Porter Royalty Pool, Inc., 1941, 296 Mich. 90, 295 N.W. 571, 138 A.L.R. 955; Denny v. Guyton, 1931, 327 Mo. 1030, 40 S.W.2d 562.

The subject is also discussed and additional cases referred to in Note, (1956), "Corporations: Does a Joint Adventure Agreement to Use the Corporation as a Medium Survive Incorporation?" 44 Calif. L.Rev. 590; and in Baker & Cary, Cases and Materials on Corporations, 284–85 (3d ed. 1958).

of a joint venture would cause the venture to cease.

■ However, it is not necessary for us to attempt to divine what Texas courts would do if confronted with this question. Here the factual evidence of the plaintiffs' intention was uncontroverted and the trial judge correctly concluded that, as a matter of law, the plaintiffs had established the existence of a joint venture at the time the alleged tort was committed.[17] Once this was clear, we think that Texas would hold, as do the other states, that communication to one joint venturer is communication to all.[18]

## III. RELIANCE

■ Nor is there merit in the contention that the court erred in refusing the defendants' requested instruction to the effect that the issue of reliance was in this case an individual matter as to each plaintiff; that there must be proof of and the jury must find reliance by, each plaintiff separate and apart from any other plaintiff before finding in his favor.

■ Two of the plaintiffs did not take the witness stand, and one of the original investors was dead. The defendants claim there was error in the court's refusal of their charge because they read Texas law as requiring first person singular testimony to prove that an individual relied on false representations. The legal effect of a person's conduct depends in many instances on his state of mind. It may turn on such subjective states as intent, wilfulness, knowledge, or good faith. Proof of a mental state, such as reliance, need not come by direct testimony from the lips of the person who claims he relied.[19] What was in a man's mind may be determined not only by what he says he thought, but by what he said and did.[20] In law, as elsewhere, actions may speak louder than words.

Richardson v. Raby, Tex.Civ.App. 1964, 376 S.W.2d 422, is authority for, not against, the trial court's instructions. In that case, a husband and wife executed a note. When suit was brought on it, they defended on the basis that the execution of the note was obtained by fraudulent representations. At the trial, the wife testified that she had relied upon the representations. The husband did not appear nor was he represented by counsel. His wife did not testify that he had relied upon the representations, and the court said, "The evidence does not disclose any declarations or conduct on the part of [the husband] in regard thereto." The Texas court did not say that testimony by the husband was indispensable to his recovery; what it said was clearly to the contrary:

> "What particular influence acts upon the mind of an individual to induce him to perform a particular act is known to him alone until disclosed by his declarations and conduct. If there has been no such disclosure, then not only the best evidence, but the only source of information on the subject, is the testimony of the party himself. * * * *"[21]

Since "proof of these essential elements of actual fraud" was lacking, there was no evidence to support a judgment for the husband.

■ While the defendants have waived their right to question the suf-

---

17. Where there is no genuine issue of fact, the existence of a joint venture can be decided on motion for summary judgment. *Hamman v. United States*, D. Mont., 1967, 267 F.Supp. 420.

18. See, e. g., *Dingle v. Camp*, 1922, 121 Wash. 393, 209 P. 853. There appear to be no Texas cases expressly considering the problem.

19. "The question [of reliance] becomes one of fact, as to whether substantial weight was given to the representation, and it usually is for the jury." Prosser, Torts § 103 at 730–31 (3d ed. 1964).

20. *John Hancock Mut. Life Ins. Co. v. Bennett*, Tex.Civ.App., 1942, 159 S.W.2d 892, error ref.

21. *Pridham v. Weddington*, 1889, 74 Tex. 354, 12 S.W. 49, 50.

ficiency of the evidence by failing to move for a directed verdict [22] the record contains abundant evidence that would justify the jury in finding that all of the plaintiffs acted jointly in relying upon the defendants' representations. The court's charge might have been prepared with greater precision, and it might have been appropriate for special interrogatories to have been submitted or for more detailed instructions to have been given. However, since a joint venture among the plaintiffs had been established, we find no reversible error in the court's charge to the jury that, in order to return a verdict for the plaintiffs, it must find that the plaintiffs were induced to act or refrain from acting by the representations, and that they would not have acted upon or refrained from acting in the absence of these representations, and that the jury must return a separate verdict for each plaintiff.

## IV. REFUSAL TO ADMIT AFFIDAVITS FILED IN OTHER LITIGATION

After the plaintiffs sold their stock in Gear, Gear sued Brown Trailer Division of Clark Equipment Company from whom Gear had purchased the trailers leased to defendants. In this suit filed in Alabama State Court, the claim was made that, because the trailers were defective and were delivered late, Gear suffered substantial losses.

The defendants sought to introduce the affidavits filed by Lowery in that suit. They urge that the trial court erred in refusing to admit the affidavits and in refusing to hold that the plaintiffs were judicially estopped to assert that the defendants' representations caused their loss.

 Where a party has taken a position under oath in one judicial proceeding, he is estopped to make a contrary assertion in a later proceeding.[23] This rule, known as judicial estoppel, is founded on the same ethical precept as estoppel in pais: a party who has induced someone else to act in a particular manner should not be permitted later to cause loss to the person he has misled by adopting an inconsistent position. Judicial estoppel, like all estoppel, is equitable in nature, and is designed to protect those who are misled by a change in position.[24] Hence, judicial estoppel may be invoked only by a party to the prior litigation or someone privy to a party.

 Recovery by Gear in its suit against Clark would have benefited the plaintiffs in that it would have reduced their liability as endorsers of Gear's note. But when the suit was filed, they were no longer shareholders in Gear and had no control over its affairs. Even had they then been stockholders, the weight of authority is that a judicial declaration by a corporation does not estop its shareholders.[25]

 However, although the allegations in the suit created no estoppel, the affidavits should have been admitted for the jury's consideration on the basis that they did reflect possible prior inconsistent statements by Lowery, who was one of the witnesses [26] at the trial. While the refusal to admit them was

22. Rule 50(b), Fed.Rules Civ.Pro. See, e. g., Indamer Corp. v. Crandon, 5 Cir., 1954, 217 F.2d 391. 5 Moore's Federal Practice ¶ 50.05[1] (See cases cited in note 7 at pp. 2343–45) (1966); Wright, Federal Courts, 369–70 (1963); 2B Barron & Holtzoff § 1079 (Wright ed. 1961).

23. Swilley v. McCain, Tex.Sup.Ct., 1964, 374 S.W.2d 871; Long v. Knox, 1956, 155 Tex. 581, 291 S.W.2d 292; Gibson v. Johnson, Tex.Civ.App., 1967, 414 S.W.2d 235; Cagle v. United States Fidelity & Guaranty Co., Tex.Civ.App., 386 S.W.

2d 149, err. ref'd per curiam, 389 S.W.2d 945, Tex.Sup.Ct., 1965.

24. See 9 Wigmore, Evidence § 2589 distinguishing judicial admissions from estoppel. An estoppel "requires some additional act of detriment on the part of the obligee." Id. § 2589 at 587.

25. New York Cent. R. Co. v. New York & H. R. Co., 185 Misc. 420, 56 N.Y.S.2d 712, aff'd, 272 App.Div. 870, 72 N.Y.S.2d 404, aff'd, 297 N.Y. 820, 78 N.E.2d 612.

26. 3 Wigmore, Evidence §§ 1017–1046.

erroneous, we find no prejudice as a result of their exclusion. Lowery was fully questioned about the litigation and about the position taken in it. He did not deny the statements attributed to him. Under the circumstances, the exclusion of the affidavits themselves was not reversible error.[27]

## V. THE PRIOR FRAUD SUIT

In 1958, a suit was filed against Colonial by two individuals who complained of alleged fraudulent representations made to them in January, 1957, by an employee of that company and judgment was rendered against Colonial. The plaintiffs in the present case offered the pleadings and judgment in that case as evidence here. They were offered and admitted only as to Colonial and solely to establish its "intent and good faith." The defendants announced they had no objection.

During the later examination of one of the defendants, the defendants' counsel proceeded to read portions of the exhibit to McBride and interrogate him about the allegations made in the complaint and about his personal lack of participation in the events leading to that suit. Later, upon continued examination, plaintiff's counsel began to read the rest of the exhibit to McBride and ask him other questions about it.

After a considerable part of the exhibit had been read, defendants' counsel objected because all of the exhibit had not been read. Plaintiffs' counsel offered to read the rest of it. Defendants' counsel then objected. At this stage, the court announced that it would admit the exhibit for all purposes because defendants' counsel had begun reading parts of it to the jury. After this ruling was made, defense counsel objected "on the ground of hearsay," but stated no further ground for the objection and requested no limiting instruction. It will be noted that, by this time, much of the exhibit had been read to the jury without objection by either party and without any request for further limiting instruction by the court.

While the evidence tendered was hearsay, it was admissible to show Colonial's intent.[28] But in a suit charging the commission of a fraud, evidence of similar frauds committed by someone else is of course inadmissible.[29] Therefore the evidence should have been admitted only against Colonial, not against its co-defendants, and only for the limited purpose of proving Colonial's knowledge, motive or intent.

Counsel, by reading the exhibit to the jury, may well have waived any limitation of its purpose. If there was no waiver, the trial court's reversal of its earlier correct ruling was erroneous. However, this was only one of the dozens of rulings made by the court in a lengthy and hotly contested trial. It did not then have the benefit of the reasoned objections now made by counsel, nor indeed of any objections based on the grounds now asserted.

Rule 46 of the Federal Rules of Civil Procedure states, "[I]t is sufficient that a party, at a time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds

---

27. Rule 61, Fed.Rules Civ.Pro. See, e. g., Morley Const. Co. v. Maryland Cas. Co., 1937, 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593; Ex parte Genecov, 1945, 143 Tex. 476, 186 S.W.2d 225, 160 A.L.R. 1099, cert. denied, Genecov v. State of Texas, 326 U.S. 733, 66 S.Ct. 41, 90 L.Ed. 436.

28. Raborn v. Hayton, 34 Wash.2d 105, 208 P.2d 133 (1949). 6 Wigmore, Evidence §§ 1714, 1715, 1725–40. Hinton, States of Mind and the Hearsay Rule, 1 U.Ch.L. Rev. 394 (1934).

29. Williams v. United States, 199 F.2d 921 (5 Cir. 1952); National City Bank v. Carter, 14 F.2d 940 (6 Cir. 1926); Carpenter v. Kraninger, 225 Or. 594, 358 P. 2d 263 (1960); Corrigan v. Heard, 225 S.W.2d 446 (Tex.Civ.App., 1959, err. ref'd n.r.e.); Stowe v. Wooten, 62 S.W.2d 67 (Tex.Com.App., 1933, opinion adopted); Great Western Motors, Inc. v. Hibbard, 112 Wash. 541, 192 P. 958 (1920); McKay v. Russell, 3 Wash. 378, 28 P. 908 (1891).

therefor * * *." This implies, however, that such an exposition must be made. This rule is " 'not a mere technicality, but is of substance in the administration of the business of the courts.' " Revlon, Inc. v. Buchanan, 5 Cir., 1959, 271 F.2d 795, 798, 81 A.L.R. 2d 222.

This rule is simply a codification of the prior practice of the federal courts. Johnston v. Reily, 1947, 82 U.S. App.D.C. 6, 160 F.2d 249. The Supreme Court long ago held:

"Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if under any circumstances, that can be done." Noonan v. Caledonia Gold Mining Co., 1887, 121 U.S. 393, 400, 7 S.Ct. 911, 915, 30 L.Ed. 1061.

"The purpose [of Rule 46] is to inform the trial judge of possible errors so that he may have an opportunity to reconsider his ruling and make any changes deemed advisable. It is therefore the general rule that points not raised and preserved below will not be considered on appeal. Tucker v. Loew's Theatre & Realty Corp., 2 Cir., 149 F.2d 677; Louisiana & Ark. Ry. Co. v. Johnson, 5 Cir., 214 F.2d 290, certiorari denied, 348 U.S. 875, 75 S.Ct. 111, 99 L.Ed. 688; Knight v. Loveman, Joseph & Loeb, Inc., 5 Cir., 217 F.2d 717. Though an appellate court, in a proper case, has power, on its own motion, to consider errors to which no objections were made, such power should be exercised only in exceptional cases and in the interest of justice. Curd v. Todd-Johnson Dry Docks, 5 Cir., 213 F.2d 864. This is not such an exceptional case." Fort Worth & Denver Railway Co. v. Harris, 5 Cir., 1956, 230 F.2d 680, 682.[30]

"It is fundamental that where an objection is specific it is deemed to be limited to the ground or grounds specified and it does not cover others not specified." Knight v. Loveman, Joseph & Loeb, Inc., 5 Cir., 1954, 217 F.2d 717, 719.[31] The burden was on the defendants' counsel to make a timely request that the court properly limit the admissibility of the evidence and properly charge the jury with respect to the manner in which it was to be considered. Camps v. New York City Transit Authority, 2 Cir., 1958, 261 F.2d 320. Failure to do so constituted a waiver of the objection. Complete Auto Transit, Inc. v. Wayne Broyles Engineering Corp., 5 Cir., 1965, 351 F.2d 478.

Therefore, it was not reversible error for the trial court to fail to exclude the evidence for reasons not stated by counsel or to fail to give limiting instructions that were never asked for.

## VI. PRE-JUDGMENT INTEREST

In a diversity case, the recovery of interest prior to the date of judgment as an element of damages is a substantive question controlled by state law. Midstates Oil Corp. v. Waller, 5 Cir., 1953, 207 F.2d 127, 131; New Amsterdam Cas. Co. v. Soileau, 5 Cir., 1948, 167 F.2d 767, 6 A.L.R.2d 128; City of Texarkana, Tex. v. Arkansas Louisiana Gas Co., 5 Cir., 1940, 118 F.2d 289. Under Texas law, interest on damages may be added to the judgment by the trial court as a matter of law. Eugene B. Smith & Co. v. Russek, 5 Cir., 1954, 212 F.2d 338, 341; Ricks v. Culp, Tex.Civ. App., 1947, 206 S.W.2d 285; Ewing v. Wm. L. Foley, Inc., 1926, 115 Tex. 222, 280 S.W. 499, 44 A.L.R. 627.

However, the Texas cases leave some doubt concerning what Texas courts would do with reference to the allowance of interest in this case. Baker v. Ashe, 1891, 80 Tex. 356, 16 S.W. 36 appears to

---

30. See also Monaghan v. Hill, 9 Cir., 1944, 140 F.2d 31.

31. See also Carona v. Pioneer Life Ins. Co., 5 Cir., 1966, 357 F.2d 477; Maulding v. Louisville & Nashville R. Co., 7 Cir., 1948, 168 F.2d 880.

be the earliest reported case in which the Texas courts considered the propriety of allowing pre-judgment interest on a claim to recover a loss suffered as a result of false representations. In that case the plaintiff deposited money in a bank in reliance upon the defendants' representations. The bank failed. At the time of the trial, the plaintiff had received dividends amounting to 37½% of his claim and there was evidence that he would receive future distributions. The court held that the plaintiff was entitled to interest on his deposit as an element of damages; but the opinion does not make it clear exactly how the interest was to be computed, for the net amount of the loss was to be determined by deducting the payments to the time of trial "and then the value of the claim at the time of the trial" from the amount of the deposits.

Watkins v. Junker, 1897, 90 Tex. 584, 40 S.W. 11, involved a claim for damages for breach of contract. The court allowed interest on the claim from the date the contract was violated, saying, "Interest, as damages, may be allowed upon unliquidated demands, whether they arise out of a breach of contract or out of a tort." 40 S.W. at 12. The court continued, "[W]e believe that, practically, the courts have come to the proposition that in all cases where the measure of recovery is fixed by the conditions existing at the time that the injury is inflicted, the person entitled to recover has also the right to have compensation for the detention of the money to which he is entitled by reason of the wrong done to him." 40 S.W. at 12.

The *Watkins* rule was approved in Texas Co. v. State, 1955, 154 Tex. 494, 281 S.W.2d 83, when the court observed, " * * * [I]nterest as damages is recoverable as a matter of law when the principal damages are fixed by conditions existing at the time the injury is inflicted." 281 S.W.2d at 92. Interest could be recovered even though the principal damages were unliquidated.[32] The total amount of damages was fixed at the time when the defendant converted oil and gas to its own use. But this did not happen on a single date: it came about as the oil and gas were produced. Again the opinion does not tell us with clarity from what dates and in what amounts interest was to be computed.

Crofford v. Armstrong, Tex.Civ.App., 1961, 342 S.W.2d 607 was an action for fraudulent misrepresentations of the value of common stock transferred by the defendant to the plaintiff in partial consideration for a conveyance of real estate. Pre-judgment interest was allowed from the date the real estate was conveyed. The court there stated the Texas rule to be: "[W]here the damages, either ex contractu or ex delicto, are complete at a definite time, and the amount is determinable by fixed rules of evidence and known standards of value, interest is recoverable as a matter of law from the date of accrual of the cause of action." 342 S.W.2d at 612.[33]

State v. Griffis, Tex.Civ.App.1957, 300 S.W.2d 220, does not dispose of the issue involved here because that was a condemnation suit in which the condemnee retained possession of the property and therefore had the use of it until the state actually took possession. The date when the state took possession does not appear from the opinion of the court, but it was apparently subsequent to the time the award was paid into the registry of the court. The court held that, under these circumstances, interest was not due from the date of payment into the registry of the court.

32. The rule has been applied in a number of Texas cases dealing with unliquidated damages. See, e.g., City of Corpus Christi v. Drought, Tex.Civ.App.1964, 380 S.W.2d 645, allowing pre-judgment interest on a quantum meruit recovery for services furnished.

33. McMillen Feeds, Inc. v. Harlow, Tex. Civ.App.1966, 405 S.W.2d 123, does not deal with the problem. The court merely affirmed an award of pre-judgment interest. The appellee had not sought an increase in the interest allowed so the court did not deal with whether it should have begun to run at an earlier date.

In Marion v. Layton, Tex.Civ.App. 1963, 373 S.W.2d 122, the defendant breached a contract to buy cotton on December 20, 1961. The last of the rejected cotton was sold to third persons on January 22, 1962. The court held "[I]t was error * * * to allow interest from December 20, 1961," because, "The complete cause of action here could not have accrued until the cotton was sold for less than the contract price." 373 S.W.2d at 123.

▆▆▆▆ On two occasions, this court has attempted to interpret Texas law with reference to the allowance of interest on unliquidated damages. In City of Texarkana, Tex. v. Arkansas Louisiana Gas Co., 5 Cir., 1941, 118 F.2d 289, we stated our interpretation of Texas law to be as follows:

"The Texas courts recognize the difference between interest contracted for or required by statute and interest allowed as damages for the detention of money; but the later cases hold that interest of the last named sort is not allowed as a matter of discretion, but is due as a matter of law if the amount of recovery, whether under a contract or for a tort, depends on conditions existing at the due date, though unascertained and disputed till the time of the trial." 118 F.2d at 294.

That case dealt with whether a utility company owed interest on overcharges to consumers. The court allowed interest from the date the refund was due, but held that the duty to make the refund did not arise when the money was collected. "The duty to make refund of the overcharge did not arise until Dec. 5, 1933, as to the first period in controversy, and Oct. 10, 1938, as to the third, being the dates on which the respective litigations in Arkansas came to an end." 118 F.2d at 295.

Texas law was again considered in F. H. Woodruff & Sons v. Brown, 5 Cir., 1958, 256 F.2d 391, a suit for fraud in the sale of onion seeds. The court held that the plaintiff's recovery was not limited to the purchase price of the seeds— he could recover the full amount of his damages. However, "Interest on the judgment commences to run from the date of the judgment." 256 F.2d at 393. The court, in a footnote, distinguished other Texas cases, saying:

"In all of these the defendant's liability became fixed on some definite date. Such is not the case, here, and therefore interest will run from the date of the judgment." 256 F.2d n.3 at 393.

Our objective is clear: to do what we think a Texas court would do.[34] But our review of the Texas cases and of our own cases dealing with Texas law leaves us certain only that no clear rule can be derived from them to apply here.

Plaintiffs' investments were made on various dates in differing amounts. On February 12, 1960, when the plaintiffs sold their Gear stock, the total amount of the plaintiffs' loss on the stock (approximately $170,000) was fixed. But they suffered further losses as the trailers were sold. The last sale was on September 25, 1951, at which time it could be determined that the plaintiffs had lost about $98,000 more. There were later payments by plaintiffs to discharge Gear's debts "over a five or six month" period of $18,500.

The plaintiffs' losses would have been reduced by a recovery in the Gear suit against Brown Trailer Division. But the record does not show whether this suit was ever disposed of, or, if it was not, what value may be attributed to the claim.

It therefore appears that by "five or six months" after February 12, 1961, the plaintiffs' claim had fully accrued. All the losses proved at the trial were then known, and no sum in mitigation of damages was recovered after that date.

The rule of Baker v. Ashe, supra, would require the allowance of interest

34. Erie R. Co. v. Thompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

from the time the net loss was determinable. Plaintiffs suggest we fix January 1, 1962 as the date by which all plaintiffs' losses had been fully incurred; this is certainly a date by which all of plaintiffs' claims had accrued. By this time the amount of damages was complete and determinable. See Crofford v. Armstrong, supra. All of the trucks had been sold by then. See Marion v. Layton, supra. The right to recovery depended on conditions then existing, though unascertained and disputed until the time of trial. City of Texarkana, Tex. v. Arkansas Louisiana Gas Co., supra.

The damages suffered by the loss of use of money are real damages. The verdict is conclusive that the defendants have owed the plaintiffs $168,000 for some time. The one result that would surely be wrong would be to say that no interest will be allowed because it is not clear from the record that this sum became due, in full, on a specific day. Justice is better accomplished by selecting as the date for commencing the accrual of interest the latest date on which the sum could have become due. And this is what we think a Texas court would do after fully studying its own precedents.

A similar question was before this Court in F. H. Woodruff & Sons v. Brown, supra. The distinguished panel of the court that decided *Woodruff* held that interest was due only from the date of judgment because the defendant's liability had not become fixed on some definite date. The rationale we follow here may be somewhat different from that employed in *Woodruff*, but our study convinces us that the view we take of Texas law is the one that Texas courts would apply until such time as a fuller exposition by the Texas Supreme Court resolves the problems we have found in attempting to apply the Texas decisions.

Reversed and remanded for amendment in accordance with this opinion.