## CITY OF TEXARKANA, TEX., v. ARKANSAS LOUISIANA GAS CO.

### No. 9350.

Circuit Court of Appeals, Fifth Circuit.

Dec. 7, 1940.

On Motion for Rehearing Jan. 14, 1941.

On Rehearing March 19, 1941.

Ed B. Levee, Jr., of Texarkana, Tex., and Benjamin E. Carter, of Texarkana, Ark., for appellant.

William C. Fitzhugh and H. C. Walker, Jr., both of Shreveport, La., and William H. Arnold, Jr., of Texarkana, Ark., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

This litigation was begun in 1933, to compel the Arkansas Louisiana Gas Company to maintain in Texarkana, Texas, the same scale of gas rates afforded in Texarkana, Arkansas, because of a clause in the franchise granted by the Texas city so providing. The period at first involved was June 17, 1930, to December 1, 1933. By supplemental pleading a period from December 1, 1933, to February 16, 1934, became involved, and one from February 16, 1934, to December 30, 1936. In the District Court a decree was rendered in 1937, which upheld the accepted franchise as a binding contract and adjudged refunds under it as to the second period but not the first; and as to the third period it was held the suit was premature because the rates in Arkansas for that period were still in litigation and not finally set up. On appeal this court held the provision of the franchise invalid. Arkansas Louisiana Gas Co. v. Texarkana, Texas, 5 Cir., 97 F.2d 5. The Supreme Court reversed, held the franchise provision applicable to all periods, and since it had on October 10, 1938, ended the litigation in Arkansas by a refusal of certiorari,* leave was granted to include by a supplemental petition the period from February 16, 1934, to October 10, 1938, and the cause was remanded to the District Court for further proceedings. City of Texarkana, Texas, v. Arkansas Louisiana Gas Co., 306 U.S. 188, 59 S.Ct. 448, 83 L.Ed. 598. The decision of the Supreme Court was rendered February 6, 1939. The Gas Company at once put the Arkansas rates into effect in Texas. The permitted supplementary pleading was filed by Texarkana, Texas, in which for the first time was asserted a right to collect interest on the refunds. It reiterated a contention made since 1936, that the City was entitled to collect attorney's fees of twenty-five per cent. from each item of refund, and a pro rata of other expense of litigation amounting to over $24,000, and that to this end it had procured from a large number of the customers entitled to refund assignments of one-half of their several refunds, and was securing other assignments. It was prayed that the Gas Company be not allowed to make refund to any customer until the court should settle the matter of attorney's fees and assignments. The Gas Company showed that there were about seven hundred refunds to each of which there were more than one claimant, and that in numerous cases there were cross demands and offsets by the Gas Company. An auditor was appointed to straighten out these disputes. Reserving jurisdiction over his report, a final decree was made on July 18, 1939, which adjudged refunds for all

---

* Arkansas Louisiana Gas Co. v. Texarkana, Ark., et al., 305 U.S. 606, 59 S. Ct. 66, 83 L.Ed. 385.

three periods of the difference between the amounts collected from each customer and that due according to the Arkansas rates at the time, retroactive to the date in each instance on which the Arkansas rates were effective; reasonable attorney's fees were fixed for the City of twenty-five per cent. and charged on each refund, and $6,167 of expenses were similarly charged pro rata upon all refunds, and an additional sum of $18,085 expenses was charged pro rata against the half of each refund which was assigned to the City, and the Gas Company was directed to settle with the City and each customer accordingly, except as to the refunds which the auditor was investigating. No interest was allowed for any period.

The sole exception presented on this appeal is the disallowance of interest, which, it is asserted, would amount to about $100,000. The District Court gave as reasons for disallowing it in substance what follows:

1. No statute awards interest. Article 5070, Texas Revised Civil Statutes, is put forward, providing: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable * * *." It refers to debts liquidated by a writing, and applies only where the amount due can be ascertained from the writing alone. McNeill v. Casey, Tex.Civ.App., 135 S.W. 1130. The franchise here liquidates nothing. It is the basis of the demand sought to be enforced, but it ascertains no amount as due. Much extraneous evidence is necessary. The statute does not apply.

2. No interest is promised. So far from promising interest the franchise contract does not contain any promise to pay anything. The promise is to put Arkansas rates into effect in Texarkana, Texas, when lower than the rates fixed in the franchise. The money adjudged to be paid is damages for a breach of that promise. While interest is awarded as of right for the detention or use of money when promised, it is added to sums awarded as damages only when in the discretion of the court or jury it should be. Redfield v. Ystalyfera Iron Co., 110 U.S. 174, 3 S.Ct. 570, 28 L.Ed. 109; Close v. Fields, 13 Tex. 623; Fowler v. Davenport, 21 Tex. 626, 627; Atkinson v. Jackson Bros., Tex.Civ.App., 259 S.W. 280, Id.,

Tex.Com.App., 270 S.W. 848. See also McNeill v. Casey, Tex.Civ.App., 135 S.W. 1130. Interest may no doubt ordinarily be allowed on refunds and reparations in respect of overcharges by public utility companies operating on fixed rates, but there is no inflexible rule that it shall be.

3. As to the first and second periods there had been before the first decree an ascertainment of the refunds due, without any claim for interest, and to reopen that matter, fix the date of collection of each bill and ascertain the interest due on it would be to retry that part of the case in a most complicated manner.

4. The rates collected were collected under a bona fide claim of right and were not extortions. This court sustained that claim of right, albeit erroneously. The Gas Company in this litigation sought to contend that the Arkansas rates would be confiscatory if applied in Texarkana, Texas. On motion this contention was stricken out as no defense, and the Supreme Court said of it, (306 U.S. page 204, 59 S.Ct. page 456, 83 L.Ed. 598): "The issue of confiscation tendered by the answer of the utility to the petition to enforce the obligations of Section IX need not be considered in this proceeding. If the utility has entered into a binding contract as to rates, their confiscatory character is not a defense to the claim of the city to service at the contract rates." By the motion to strike the City confessed the confiscatory character of the rates as applied in Texarkana, Texas, for the purposes of this litigation. In a somewhat similar situation where a railroad had collected overcharges it was thought inequitable to require refund even of the principal amounts. Atlantic Coast Line Railroad Co. v. Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451. A fortiori may a court of equity refuse discretionary interest on refunds.

5. In the period ending Oct. 10, 1938, as held by the Supreme Court, there was no right to ask a refund until the termination of the litigation in Arkansas on that date. These refunds did not become owing till then. On a general principle they would draw no interest till due. The same principle would similarly postpone interest in the other periods.

6. But further, as to all periods, the refunds were unliquidated demands until fixed by the court. Not only were they by nature such, but even the persons to whom owing were put in doubt; as to some by dis-

pute among claimants, as to all by the assertion by the City of partial assignments, and of the right to charge attorney's fees and expenses against the refunds. The Gas Company could not safely pay anyone, and the City stood asking the court to prevent it. Not only action by the court but the investigations of an auditor were necessary to ascertain what and to whom payment is due. The law does not penalize by unpromised interest a nonpayment under such circumstances. Compare St. Louis & O'Fallon Ry. Co. v. United States, 279 U.S. 461, 49 S.Ct. 384, 73 L.Ed. 798.

On the whole case we think a refusal of interest was proper and

The judgment is affirmed.

McCORD, Circuit Judge (dissenting).

I do not concur in the majority opinion.

On June 13, 1930, the City of Texarkana, Texas, passed an ordinance granting a franchise to the appellee gas company. The franchise agreement became effective upon the filing of the gas company's acceptance on June 18, 1930. Section IX of the agreement provides: "If Grantee shall be finally compelled to, or should voluntarily place in any rates in the City of Texarkana, Arkansas, less than the rates granted by this ordinance then and thereupon the lessened rate shall apply in the City of Texarkana, Texas, and Grantee shall not be authorized or permitted to charge and collect any higher rate."

After long, drawn-out litigation the District Court of the United States for the Western District of Arkansas entered its decree restoring lower 1923 rates in the City of Texarkana, Arkansas, and ordering a refund of the excess collections from May, 1930, to December 1, 1933. City of Texarkana, Arkansas, v. Southern Cities Distributing Co., 8 Cir., 64 F.2d 944, certiorari denied 290 U.S. 650, 54 S.Ct. 67, 78 L.Ed. 563. After entry of the decree the overcharges collected by the gas company from May, 1930, to December, 1933, were immediately refunded to the Arkansas consumers, and the lower 1923 rates were put into effect in Texarkana, Arkansas. The gas company made no refunds to Texas consumers and declined to put the lower rates into effect on the Texas side. On December 12, 1933, the City of Texarkana, Texas, called upon the gas company to place the lower rates into effect in Texas and make refunds of the amounts collected as overcharges prior to that time.

The gas company refused and on January 15, 1934, the Texas City filed suit in the District Court of the United States for the Eastern District of Texas and asked for refunds on the same basis as refunds were made to Arkansas consumers. Thereafter, on February 16, 1934, the gas company filed suit in the District Court of the United States for the Western District of Arkansas and sought to enjoin interference with another proposed increase in rates. Under the protection of a temporary injunction the higher rates were collected in Arkansas until a decree was entered on December 4, 1936, upholding the validity of the lower rates, and giving judgment, with interest from the date of collection, for the overcharges to Arkansas consumers from February 16, 1934, to December 4, 1936. An injunction pending appeal was denied and the lower rates prevailed and were collected in Arkansas after December 4, 1936. The Circuit Court of Appeals for the Eighth Circuit affirmed the District Court and held that the lower rates were not confiscatory. The Supreme Court denied certiorari on October 10, 1938. Arkansas Louisiana Gas Company v. City of Texarkana, Arkansas, 17 F.Supp. 447; Id., 96 F.2d 179; Id., 305 U.S. 606, 59 S.Ct. 66, 83 L.Ed. 385.

On July 30, 1937, a decree denying refunds was entered by the District Court for the Eastern District of Texas in the suit filed by the City of Texarkana, Texas, against the gas company. On appeal this court held Section IX of the franchise agreement invalid and affirmed the judgment of the lower court. Arkansas Louisiana Gas Company v. City of Texarkana, Texas, 5 Cir., 97 F.2d 5. The Supreme Court reversed this court and held that Section IX was a valid and binding contract between the City of Texarkana, Texas, and the gas company. In that opinion the Supreme Court pointed out the course to be followed. City of Texarkana, Texas v. Arkansas Louisiana Gas Company, 306 U.S. 188, 59 S.Ct. 448, 456, 83 L.Ed. 598, and Id., 306 U.S. 620, 59 S.Ct. 448, 83 L.Ed. 1026.

As to the confiscatory character of the rates the Supreme Court said: "If the utility has entered into a binding contract as to rates, their confiscatory character is not a defense to the claim of the city to service at the contract rates." In upholding Section IX of the franchise agreement the Supreme Court said: "We construe 'finally

compelled' as meaning the entry by a court of the final order which makes effective a challenged rate order. No right to demand the lower rate and no cause of action to enforce the right arises until that time. When such order is entered, however, the Texas consumers are entitled to have the lower rate applied to their consumption for the same period of time it is enjoyed by the Arkansas consumers. * * * Leave to file a supplemental petition to bring to date the controversy over the refund of rates, collected subsequent to February 16, 1934, should be granted, upon the return of the case to the District Court, on motion of the City of Texarkana, Texas. The present action is an appropriate proceeding for the settlement of the entire rate controversy and the refund of such sums as may be determined, ultimately, to be due the Texas consumers."

When the mandate from the Supreme Court came down, the Texas City asked for the lower Arkansas rate, for a refund of the overcharges, and for interest on the money wrongfully collected and withheld by the gas company. The District Court held that "the claim for interest as now raised comes too late, would virtually involve a new trial, and must be disallowed. * * * that the defendant is now serving gas to the City of Texarkana, Texas, at confiscatory rates. It follows that defendant is prevented from obtaining a raise in its rates only by its franchise contract. * * * even were the interest question properly raised in plaintiff's supplemental pleading, the interest prayed for should be denied as unjust and inequitable under the circumstances of this case."

The circumstances of this case as I see them are these: The gas company had a contract with the City of Texarkana, Texas. It refused to live up to the terms of Section IX of the contract. The gas company litigated, as it had a right to do, in every court. It lost. The Supreme Court held that it must carry out the terms of its franchise agreement and that the alleged "confiscatory character" of the rates was no defense to the claim of the City of Texarkana, Texas.

I do not think that the amount of interest that would have to be paid is of controlling importance. Likewise, just how much consumers and litigants had to pay lawyers and accountants to aid them in getting their money back is of no moment here. If the gas company had lived up to its solemn contract, as it should have done, the expenditures pointed out in the majority opinion would not have been incurred.

There is nothing ambiguous about Section IX of the franchise agreement and I see nothing complicated about returning the overcharges with interest. It was no great task to refund the overcharges and pay interest on the Arkansas side. It seems that the case only becomes complicated when we step across to the Texas side of the street.

From December, 1933, until February, 1939, the gas company took and used the money of Texas consumers in the face of a demand that it install the lower rates and refund the overcharges it had made.

In December, 1933, the Arkansas consumers received refunds for the period from June, 1930, to December, 1933. The Texas consumers received no refunds. The Supreme Court has said that they were entitled to refunds for this period. From December, 1933, to February 16, 1934, the Arkansas consumers actually paid the lower rates and the gas company refused to give the Texas consumers the benefit of the rates as provided by Section IX of the franchise. From February 16, 1934, to December 4, 1936, the higher rates were paid by Arkansas consumers, but after the decree of December 4, 1936, they received refunds for the period, with interest. The Texas consumers paid the higher rates for the same period and have been denied interest although the gas company was invited to impound the questioned overcharges for the period. After December 4, 1936, the Arkansas consumers paid the lower rates, but the higher rates were exacted of the Texas consumers.

Article 5070, Revised Civil Statutes of Texas, provides that: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable."

The contract between the City of Texarkana, Texas, and the gas company provides in no uncertain terms for the rates to be charged in the Texas City. The amounts now due consumers can be ascertained by application of the terms of the written franchise agreement. I think the Texas interest statute applies.

The damage to consumers was complete when the overcharges were made. On the

overcharges collected during the first period, June 30, 1930, to December, 1933, interest should be awarded from December 1, 1933, to the date of refund. On the overcharges collected after December 1, 1933, interest should be awarded from the date of collection of such overcharges to the date of refund. Arkadelphia Co. v. St. Louis S. W. Ry. Co., 249 U.S. 134, 147, 39 S.Ct. 237, 63 L.Ed. 517; Miller v. Robertson, 266 U.S. 243, 257, 45 S.Ct. 73, 69 L.Ed. 265; Davis v. Stamford Mill Co., Tex.Civ.App., 260 S.W. 1081.

The case of Atlantic Coast Line Railroad Co. v. Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451, is not citation in this case.

The judgment should be reversed.

I respectfully dissent.

### On Motion for Rehearing.

**PER CURIAM.**

A rehearing is granted, and briefs may be filed by February 15, 1941, without oral argument, especially on these points:

Treating the interest as damages, and not required by contract or statute, ought it to be awarded from the dates on which by the final establishment of lower rates in Arkansas the right fully matured to have refunds made in Texas; that is to say, from December 1, 1933, as to the first period in controversy; and from October 10, 1938, as to the last period? As to the intervening period from December 1, 1933, to February 16, 1934, as to which refunds were by the first decree adjudged, which judgment stands unreversed on that point, ought interest to be allowed from the date of that judgment? Ought interest to be allowed for any time during which the City was resisting settlement by the Gas Company with its customers?

### On Rehearing.

**SIBLEY, Circuit Judge.**

We ordered a rehearing that we might reconsider especially whether interest as damages, as contrasted with interest required by the contract or a statute, ought to be awarded from the dates on which by the final establishment of lower rates in Arkansas the right matured to have refunds made in Texas, as to the first and third periods in controversy; and from the date of the unreversed decree as to the second period; and whether the running of interest should not be suspended for any

time during which the City resisted settlement by the Gas Company with its patrons.

The statement of the case made in our former opinion stands. We adhere to the conclusions that no statute awards interest, and none is promised in the contract. The remainder of the opinion expresses the views of the lower court and may be correct under the general principles of equity jurisprudence; but we feel constrained to depart from them in part for the reasons which follow.

This being a case in which this court exercises jurisdiction only because of diversity of citizenship, we are bound, though it be a case in equity, to follow the rules of law established for like cases in the courts of Texas where law and equity are merged. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Wichita Royalty Co. v. City National Bank, 306 U.S. 103, 59 S.Ct. 420, 83 L.Ed. 515.

The Texas courts recognize the difference between interest contracted for or required by statute and interest allowed as damages for the detention of money; but the later cases hold that interest of the last named sort is not allowed as a matter of discretion, but is due as a matter of law if the amount of recovery, whether under a contract or for a tort, depends on conditions existing at the due date, though unascertained and disputed till the time of the trial. In such cases interest is to be added as matter of law by the court in entering judgment on the verdict of the jury when it is certain the jury has not already included it. Watkins v. Junker, 90 Tex. 584, 40 S.W. 11; Ewing v. Foley, Inc., 115 Tex. 222, 280 S.W. 499, 44 A.L.R. 627; Texas & N. O. Ry. Co. v. Dingfelder & Balish, 134 Tex. 156, 133 S.W.2d 967; First State Bank v. Commercial State Bank, Tex.Civ.App., 34 S.W.2d 297; Taylor-Link Oil Co. v. Anderson, Tex.Civ.App., 92 S.W.2d 499; Harrison v. Barngrover, Tex.Civ.App., 118 S.W.2d 415; Joy v. Peacock, Tex.Civ.App., 131 S.W.2d 1012. The amount of each refund due in this case depended on simple fixed factors, to-wit, the rate charged and the rate finally established in Arkansas. Because not paid when due, interest at the legal rate is owing as a matter of law as damages for detaining the money, unless waived. But the refund in this case was not due to be made as soon as the money was collected, for under the contract an involuntary lower rate was not

to be put into effect in Texas until it was finally established in Arkansas. City of Texarkana v. Arkansas Gas Co., 306 U.S. 188, at page 202, 59 S.Ct. 448, at page 455, 83 L.Ed. 598.[1] Until then the Gas Company could collect and keep the money under the current Texas rate. The duty to make refund of the overcharge did not arise until Dec. 5, 1933, as to the first period in controversy, and Oct. 10, 1938, as to the third, being the dates on which the respective litigations in Arkansas came to an end.

As to the second period, interest was not claimed in the pleadings nor insisted on in the trial, and a decree was rendered for the refunds of that period without interest. That part of the decree stands unreversed by the mandate of the Supreme Court. In the leading case of Ewing v. Foley, supra, it is stated that when interest is not claimed in the pleadings or in the trial it is waived and cannot afterwards be added. But this decree itself, standing unreversed, should draw interest from its date, July 21, 1937, according to Rule 30 of this Court and of the Supreme Court; and Article 5072, Revised Civil Statutes of Texas, is to the same effect.

It appears that for some period the City, whose contract with the Gas Company is being enforced for the benefit of the latter's patrons, itself complicated the situation by taking partial assignments from the patrons and prayed the court to stop the Gas Company from settling with the patrons until the further order of the court, and this was done. During any time that the Gas Company was prevented by the City from making payments which it was endeavoring to make, the City cannot demand interest as damages for nonpayment. The facts do not clearly appear in this regard, and may be ascertained hereafter.

The Gas Company did settle with numerous patrons before the issue about interest was pressed. It is earnestly argued that acceptance by these of the principal without claiming interest is a waiver of interest allowable as damages. Such is the general rule. 30 Am.Jur., Interest, § 12; Stewart v. Barnes, 153 U.S. 456, 14 S.Ct.

849, 38 L.Ed. 781; Nelson v. Chicago Mill & Lumber Corp., 8 Cir., 76 F.2d 17, 100 A.L.R. 87; United Brothers v. Kennedy, Tex.Civ.App., 193 S.W. 253. This issue was not presented in the court below, and the facts concerning it have not been developed. The matter is left open for consideration by the district court.

The judgment of affirmance heretofore made is set aside, and the decree appealed from is reversed in so far as it denies all interest and the cause is remanded for further proceedings not inconsistent with this opinion.

McCORD, Circuit Judge (concurring).

I am of opinion that the Texas interest statute applies. Article 5070, Revised Civil Statutes of Texas. This case, however, is not without its difficulties and I, therefore, concur in the opinion on rehearing.

---

[1] "The lower rates for Texas are to be effective only when the utility is 'finally compelled to, or should voluntarily, place in' effect the lower rates for Arkansas. * * * We construe 'finally compelled' as meaning the entry by a court of the final order which makes effective a challenged rate order. No right to demand the lower rate and no cause of action to enforce the right arises until that time."