PHILLIPS PETROLEUM COMPANY, a corporation, Plaintiff,

v.

RIVERVIEW GAS COMPRESSION COMPANY et al., Defendants.

No. CA-2-1365.

United States District Court,
N. D. Texas,
Amarillo Division.

March 3, 1976.

C. J. Roberts, Jack Ritchie, Thomas L. Cubbage, II, Amarillo, Tex., for plaintiff.

Paul H. Smith of Cox, Smith, Smith, Hale & Guenther, Inc., San Antonio, Tex., for Pensco & Nat'l Bank of Commerce of S. A.

Robert J. Hearon, Jr., of Graves, Dougherty, Gee, Hearon, Moody & Garwood, Austin, Tex., for Wm. Mark Day, Jr.

Maston C. Courtney of Culton, Morgan, Britain & White, Amarillo, Tex., for Riverview.

## MEMORANDUM OF OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW UPON REMAND

WOODWARD, District Judge.

### I.

This is a continuation of an interpleader action filed on March 12, 1973, by Phillips Petroleum Company ("Phillips") to determine who was entitled to the interpleaded fund which represented additional proceeds due under several casinghead gas contracts in the wake of Federal Power Commission Opinion No. 586 (The Hugoton-Anadarko Rate Order) having become final, and in which several of the defendants counterclaimed against Phillips for interest. The prior aspects of this case are reported as *Phillips Petroleum Company v. Riverview Gas Compression Company,* 372 F.Supp. 282 (N.D.Tex.1974), and as *Phillips Petroleum Company v. Riverview Gas Compression Company,* 513 F.2d 374 (5th Cir. 1975),[1] *cert. denied, sub. nom., Phillips Petroleum Company v. Adams,* 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975).[2]

Prior to the initial trial of this action a number of the interpleaded defendants disclaimed any interest in the fund interpleaded by Phillips, and the other remaining defendants adopted the salutory course of resolving their disagreements with respect to the ownership of the interpleaded fund in two separate settlement agreements so that this Court was not required to interpret the various instruments of assignment between the remaining parties.

1. A fuller understanding of the Fifth Circuit's decision in *Riverview* requires reference to its companion case, *Phillips Petroleum Company v. Adams,* 513 F.2d 355 (5th Cir. 1975), *cert.* *denied,* 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975).

2. The petition for writ of certiorari in *Adams* and *Riverview* was a consolidated petition.

The first trial of this action was had on March 6, 1974, and the sole questions remaining were: (1) whether the court had jurisdiction to hear the defendants' counterclaims for interest; and (2) if jurisdiction existed, whether Phillips was liable to the defendants for interest. On March 12, 1974, this Court answered the first question in the affirmative and the second in the negative. The defendants appealed the Court's ruling on the interest question.

On May 22, 1975, on appeal, the Court of Appeals, relying on its decision in the companion case of *Phillips Petroleum Company v. Adams, supra,* reversed this Court's ruling on interest. Phillips' request for rehearing *in banc* was denied by the Fifth Circuit on June 18, 1975, 515 F.2d 1183. Thereafter, Phillips filed a petition for writ of certiorari which, on November 3, 1975, was denied by the United States Supreme Court.

In January 1976, the defendants filed with the Court of Appeals a Motion to Reform Mandate seeking therein to establish a right to obtain interest on any interest awarded in the remand phase of this action for the post March 11, 1974, period, that is, for the period subsequent to this Court's initial decision. On February 10, 1976, the Court of Appeals denied the defendants' motion.

Thus, this case was once again ripe for action by this Court under a mandate which reads in pertinent part:

" * * * We now remand this case to the district court for a determination of the amount of interest which Phillips must pay to each of the various claimants, consistent with *Adams* and the settlement agreements. For the reasons stated in *Adams,* Phillips need not pay interest for the period subsequent to March 12, 1973, the date of its unconditional tender of the principal sum into court." 513 F.2d at 375.

At the direction of this Court, the parties have submitted for the Court's approval an agreed Supplemental Pre-Trial Order, which order has been approved by the Court and filed in this case. In the Supplemental Pre-Trial Order it was determined that there are no contested ultimate issues of fact and that the contested issues of law to be determined at trial on remand are: (1) whether the defendants are entitled to interest in accordance with their contentions; and (2) whether Phillips is entitled to defeat, in whole or in part, defendants' claims for interest in accordance with Phillips contentions.[3]

## II.

Thus, the above styled case came on to be tried on remand before the Court, without a jury, on March 3, 1976, with the attorneys for each party appearing and announcing ready for trial. After hearing and considering the evidence, the pleadings, the arguments and briefs of counsel, the Court files this Memorandum of Opinion which shall constitute the Court's findings of fact and conclusions of law on remand. Additionally, the Court incorporates as a part of the findings of fact in this case the factual admissions contained in both the Pre-Trial Order and the Supplemental Pre-Trial Order, and the Court's earlier Memorandum Opinion (printed at 372 F.Supp. 282 *et seq.*). A summary description of the circumstances attending this case is given below, but the Court refers to the above-described orders and opinions for further specific findings-of-fact.

In addition to Phillips, the parties defendant involved in this action are Riverview Gas Compression Company, a partnership composed of Ron Blumberg and Roy E. Travis, executors of the estate of M. M. (Marion Mitchell) Travis, deceased, Arnold M. Travis, Edward Meltzer, Sr., and Julius Fligelman; Ron Blumberg and Roy E. Travis, individually and as partners or former partners of Riverview Gas Compression Company, hereinafter called the "Travis Group," William Mark Day, Jr., an individual hereinafter called "Day"; Pensco, Inc., a corporation, indi-

---

**3.** The contentions of both sides are detailed in paragraphs II.C. and II.D., respectively of the Supplemental Pre-Trial Order.

vidually and as trustee; and National Bank of Commerce of San Antonio, a national banking association. Inasmuch as there is a community of interest between the latter two parties, they are referred to hereinafter simply as "Pensco."

Phillips is a petrochemical company which is engaged, among other things, in the purchase, transportation, and sale of natural and casinghead gas. During the time relevant to this action, the Travis Group, Day and Pensco were engaged in the production and sale of oil and gas from mineral leases located in the Texas Panhandle. Casinghead gas produced by the Travis Group, Day and Pensco was sold to Phillips pursuant to percentage-of-proceeds contracts which provided, among other things, that the amount payable under the contract would be pegged as a percentage of the price at which Phillips sold gas to third parties.

The price of gas charged by Phillips in its sales to pipeline companies for interstate transportation and resale was controlled by the Federal Power Commission ("FPC" or "Commission") under its broad authority to fix just and reasonable rates for such sales.

Phillips filed numerous proposed price increases with the FPC that were originally suspended by the Commission and later put into effect by Phillips subject to refund. Prior to making collections subject to refund Phillips was required to file a corporate undertaking with the FPC to make certain that such refunds would be made to purchasers if the FPC so ordered. It can be seen that if the FPC subsequently granted only part of the requested price increase, then Phillips was required to refund part of the sales proceeds it had received to the purchasers. These proceeds are known as "refundable" monies; those proceeds obtained as a result of the approved portion of the price increase are known as "sustainable" monies and were to be paid, in part, by Phillips to the producers pursuant to the casinghead gas contracts. Pending FPC approval of the price increase, Phillips made monthly payments to the Travis Group, Day and Pensco, and to the other percentage-of-proceeds contract sellers, for Phillips' gas purchases on the basis of the "firm proceeds" of Phillips' own sales (i. e., calculated on the rates which FPC had previously approved) and did not remit any of the monies attributable to the proposed rate increases while FPC approval of the rates was still pending. Until Opinion 586 became final, Phillips had no way of knowing what portion of the sales proceeds would be "refundable" and what portion would be "sustainable."

The FPC ultimately approved a portion of the price increases requested by Phillips and established refund requirements for those increases that were not approved. The ruling by FPC was affirmed by the Ninth Circuit Court of Appeals in *People of the State of California v. Federal Power Commission,* 466 F.2d 974 (9th Cir. 1972), and this decision became final on October 28, 1972.

Prior to October 28, 1972, Phillips and Day and Pensco entered into three separate indemnity agreements more particularly described as follows:[4]

    a. Indemnity Agreement, dated July 18, 1966, between W. M. Day, Jr., and Phillips (Appendix I Supplemental Pre-Trial Order.);

    b. Indemnity Agreement, dated April 12, 1972, between Pensco, Inc. and Phillips (Appendix II, Supplemental Pre-Trial Order); and

    c. Extension of Indemnity Agreement, dated May 2, 1972, between Pensco, Inc. and Phillips[5] (Appendix III, Supplemental Pre-Trial Order).

---

4. There was no indemnity agreement between Phillips and the Travis Group.

5. The extension agreement of May 2, 1972, extended the agreement of April 12, 1972, to cover, in addition to the .3245 working interest owned by Pensco, Inc., the .3630 working interest owned by National Bank of Commerce of San Antonio, for the account of Pensco, Inc., Trustee of Trust No. 20. Thus, is the community interest between these two parties formed.

The indemnity agreements provided that the monies would be paid to Day and to Pensco, respectively, and if the ultimate decision in the rate matter before FPC required a refund of all or any portion thereof, then they would refund same to Phillips together with interest. It should be noted that if Phillips was required to refund monies to its purchasers then Phillips would also be required to pay interest to the purchasers on the monies refunded for the length of time same were held by Phillips. Day and Pensco were required to obtain bank letters of credit as security and this was done.

Subsequent to the dates of the execution of the three referenced indemnity agreements, and prior to October 28, 1972, Phillips disbursed monies to Day and to Pensco, in addition to the "firm proceeds" being disbursed to each. At the times of the initial additional disbursals the total sums disbursed were made up of a then unknown and then unascertained mix of what on October 28, 1972, became "sustainable," "refundable," and "outside 586" monies, for at the time of the disbursements of the monies by Phillips to Day and to Pensco, there was no basis by which the amount of "sustainable" proceeds and "refundable" proceeds finally could be determined. Thus the first payout to Day, under the July 18, 1966, agreement was on January 6, 1967, and the first payout to Pensco, under the agreement of April 12, 1972, (and the extension agreement of May 2, 1972), was on July 28, 1972. After FPC Opinion 586 became final, and pursuant to the terms of the referenced indemnity agreements, both Day and Pensco returned the "refundable" money in their possession, together with interest thereon, to Phillips, and Phillips, in turn, returned this money and interest to the interstate pipeline companies from whence it originally was obtained.

### III.

Before this Court can examine the interest question in this trial on remand, it first must consider Phillips' jurisdictional challenge to the counterclaims for interest. During the first trial of this case, Phillips also made a jurisdiction attack on the propriety of hearing the defendants counterclaims and this Court denied Phillips' motion to dismiss, stating the reason for such action. See 372 F.Supp. at 284.

On December 31, 1975, Phillips filed its Motion to Reconsider Phillips Petroleum Company's Further Motion to Dismiss Counterclaims. Both sides have filed briefs; however, the Court has not yet ruled on this motion and the same is pending.[6]

■ Phillips would have the Court dismiss defendants' counterclaims on the grounds that:

1. The Court in this interpleader action brought under 28 U.S.C. § 1332(a) has no jurisdiction to grant judgment in personam as to any subject matter apart from the interplead fund.

2. Phillips Petroleum Company is not "opposing party" within the meaning of Rule 13, Federal Rules of Civil Procedure; thus, no counterclaim, whether compulsory or permissive, is allowable.

3. The counterclaims bear no "logical relationship" to the transaction or occurrence that is the nexus of plaintiff's interpleader action, and are characterized, at best, as being permissive. Being properly characterized as permissive, the counterclaims all require

---

**6.** There can be no doubt about this court's ability to take a second look at the soundness of its jurisdictional footing at this stage of the proceedings. Most recently, in the case *In Re Durensky,* 519 F.2d 1024 (5th Cir. 1975), Circuit Judge Goldberg said the following:

"\* \* \* An order denying a motion to dismiss for lack of jurisdiction is perhaps unique in its incapacity permanently to affect the rights of the moving party, for jurisdictional defects may be recognized by a court at any time, on the motion of the parties or on its own motion. See *American Fire & Cas. Co. v. Finn,* 1951, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702, 710–711; \* \* \*" 519 F.2d at 1029.

an independent jurisdictional base, and such a base is lacking with regard to the counterclaims of Pensco and Day, in that the maximum amount of interest arguably recoverable by either of these defendants may be said, with legal certainty, will not exceed $10,-000.00.

Notwithstanding the attack made by Phillips, this Court remains convinced of the correctness of its original decision. See 372 F.Supp. at 284. Thus, Phillips' motion to dismiss on jurisdictional grounds is denied.[7]

## IV.

Being satisfied with its jurisdictional footing, this Court now moves to the claims of the defendants for interest, and Phillips' defensive response. The defendants all contend: (1) that they are entitled to recover interest at six percent (6%) per annum on the "sustainable" portion of the money withheld each month by Phillips during the pendency of price increase proceeds, with liability to run to March 12, 1973; and (2) that they also are entitled to recover post-judgment interest on the amounts claimed above, computed at the statutory rate from March 11, 1974. Phillips contends that it does not owe interest to any defendant because:

a. Texas statutory and decisional law does not allow an award of interest for the period prior to the time the sustainable money became legally due and payable, i. e. October 28, 1972; or

b. Interest on the sustainable money for the period prior to October 28, 1972, is barred by Texas decisional law because of the bona fide dispute rule,

i. e., it was uncertain what part, if any, of the money collected by Phillips subject to refund would be "sustainable" and what part would be "refundable"; or

c. Interest on the sustainable money for the period subsequent to October 28, 1972, is barred by Texas decisional law because of the bona fide dispute rule, i. e., it was uncertain which of the several rival claimants were entitled to all, or any part, of the "sustainable money";

d. Alternatively, Phillips contends that the claims of Day and Pensco for interest are barred under Texas law by reason of their acceptance of the principal sum without reserving their right, if any, to sue for interest at a later time;

e. Alternatively, Phillips contends that if interest liability exists, then its liability to Day and to Pensco ceased when it lost the "reasonably free use" of the money, i. e., as of the dates of the indemnity agreements.[8]

f. Alternatively, Phillips contends that if interest liability exists, then Phillips is not liable to any defendant for interest on said interest from and after March 11, 1974, for the reason that the mandate provides that "Phillips need not pay interest for the period subsequent to March 12, 1973," and for the further reason that on February 10, 1976, the United States Court of Appeals for the Fifth Circuit *denied* the defendants' motion to reform the mandate to provide for interest in the period subsequent to March 11, 1974, the date of this Court's original decision in this case.

7. Phillips did not cross-appeal on the jurisdictional point in the first appeal; however, the *jurisdictional issue was raised in Phillips* Petition for Rehearing which was denied, without opinion, at 515 F.2d 1183. Still, the question must be examined, for jurisdiction may not be conferred on a federal district court by the inaction of one of the parties. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

8. In this regard, Day and Pensco contend that if they are not entitled to interest for the full

period ending March 12, 1973, then Phillips did not actually lose the "reasonably free use" of the money until it actually was disbursed. The amounts of interest, under the various possibilities, has been stipulated as follows:

|  | Interest to Date of Agreement | Interest to Date of Payment | Interest to March 12, 1974 |
|---|---|---|---|
| To Day: | $7,968.85 | $8,809.14 | $23,605.64 |
| To Pensco: | $6,578.22 | $6,974.80 | $ 8,061.49 |

In this trial on remand we are concerned with determining "the amount of interest which Phillips must pay to each of the various claimants, consistent with *Adams* and the settlement agreements." 513 F.2d at 375.

## V.

The defendants all claim they are entitled to interest on that portion of the sustainable money which Phillips withheld, with liability to run to March 12, 1973. They rely on the decisions of the Court of Appeals in *Phillips Petroleum Company v. Riverview Gas Compression Company* (hereinafter *"Riverview"*), *supra*, and *Phillips Petroleum Company v. Adams* (hereinafter *"Adams"*), *supra*, and unless Phillips can show how this Court may deny interest in whole or part, then surely the defendants must recover interest for the full period.

■ Phillips' contentions noted above that Texas statutory and decisional law do not allow interest prior to October 28, 1972, or thereafter, were sustained by this Court in the initial trial but were overruled. Thus, their contentions are of no avail. Other than the jurisdictional defense, disposed of above, Phillips makes no other defense to the counterclaim of the Travis Group for interest. This being so, the Court finds that the Travis Group is entitled to recover interest from Phillips in the stipulated amount of $131,268.30. Further, inasmuch as the Travis Group and Pensco have entered into a settlement agreement regarding the distribution of money relating to gas produced during the tenure of the Travis Group, the Travis Group and Pensco must be treated as one entity with regard to Phillips' liability for interest on the additional proceeds relating to production by the Travis Group. Consequently, and pursuant to the Settlement Agreement of June 1, 1973, the above said sum will be divided as follows:

| | Percent of Total | Amount |
|---|---|---|
| Travis Group: | 75% | $ 98,451.22 |
| Pensco: | 25% | 32,817.08 |
| | 100% | $131,268.30 |

Accordingly, a judgment will be entered awarding the Travis Group and Pensco, and requiring Phillips to pay the Travis Group interest in the sum of $98,451.22, and requiring Phillips to pay Pensco interest in the sum of $32,817.08, both of which sums equal the said parties agreed share of the stipulated amount of interest on the "sustainable" money from the date of receipt of same by Phillips to March 12, 1973, the date this suit was filed.

## VI.

In regard to the claims of Pensco and Day for interest on the additional proceeds relating to production during their respective tenures as leasehold owners, Phillips contends that both Day and Pensco are barred, as a matter of law, from claiming interest by reason of their acceptance of the principal sums, pursuant to the aforementioned indemnity agreements, without reserving their right to later sue for interest. In support of this contention, Phillips relies on *Nueces Hotel Co. v. Ring,* 217 S.W. 255 (Tex.Civ. App.—San Antonio 1919, *writ dism'd*). There the court, referring to the holding in *United Bros. of Friendship v. Kennedy,* 193 S.W. 253 (Tex.Civ.App.—Texarkana 1917, *no* writ.), said:

> It was held that acceptance of the principal on a contract not specifying interest was a bar to the recovery of interest. That was all that probably should have been held, or that was intended to be held. 217 S.W. at 256.

In the *Kennedy* case, *supra*, the court said:

> * * * The trial court found as a fact that appellees accepted the $500 paid to them May 10, 1916, as a 'full settlement for all claims' they had against appellant, but concluded that appellees, 'under the law of accord and satisfaction,' nevertheless were entitled to recover interest on the sum from the time it should have been paid to them. The law the court invoked, when applied to the facts of the case, did not authorize the conclusion he reached. Appellant's contract was to pay the $500. It did not contract to

pay interest. Therefore interest was recoverable only as damages. The rule applicable to such a case has been stated as follows:

> Where there is no express contract or obligation to pay interest as well as principal, and the interest is recoverable only as damages for nonpayment of the principal when it is due, the receipt of the principal, as such, in full, is a bar to any claim for interest, because it is considered no part of the debt, but as a mere incident of the debt; and it is immaterial whether the debt be past due or running to maturity. It is likewise immaterial that the creditor received payment of the principal without interest under protest. This does not change the legal effect of his act. 1 C.J. 546; and see 1 Cyc. 325; 1 R.C.L. 189.

> The judgment will be reversed, and judgment will be rendered here that appellees take nothing by their suit against appellant. 193 S.W. at 253.

■ After studying the *Ring* and *Kennedy* cases, this Court has come to the conclusion that the rule therein stated is applicable only in cases involving interest as damages. See also, *City of Texarkana v. Arkansas Louisiana Gas Company*, 118 F.2d 289 (5th Cir. 1941), *vacated per stipulation* 315 U.S. 780, 62 S.Ct. 579, 86 L.Ed. 1188 (1942) where, on rehearing, it was said:

> The Gas Company did settle with numerous patrons before the issue about interest was pressed. It is earnestly argued that acceptance by these of the principal without claiming interest is a waiver of interest allowable *as damages*. Such is the general rule. 30 Am.Jur., Interest, § 12; *Stewart v. Barnes*, 153 U.S. 456, 14 S.Ct. 849, 38 L.Ed. 781; *Nelson v. Chicago Mill & Lumber Corp.*, 8 Cir., 76 F.2d 17, 100 A.L.R. 87; *United Brothers v. Kennedy*, Tex.Civ.App., 193 S.W. 253. This issue was not presented in the court below, and the facts concerning it have not been developed. The matter is left open for consideration by the district court. 118 F.2d at 295 (Emphasis added).

Here we are not concerned with interest *as damages*. *Adams, supra*, 513 F.2d at 365.

## VII.

■ As was noted above, Phillips also contends that if interest liability exists with regard to the counterclaims of Pensco and Day, then such liability should cease when Phillips lost the "reasonably free use" of the money, i. e., as of the dates of the several indemnity agreements. It appears to the Court that the interest on the principal sum of the "sustainable" monies should terminate as of the respective dates of the indemnity agreements above set forth. These were agreements on the part of Phillips to pay to Day and to Pensco the "sustainable" monies, as soon as the amount could be conveniently computed, and it was on the respective dates of the indemnity agreements that Phillips lost the "reasonable free use" of these monies. This decision is, in the Court's view, "consistent with *Adams*."

■ In reversing and remanding this case, the Court of Appeals said:

> * * * We now remand this case to the district court for a determination of the amount of interest which Phillips must pay to each of the various claimants, *consistent with Adams* and the settlement agreements. * * * 513 F.2d at 375 (Emphasis added).

In *Phillips Petroleum Company v. Adams, supra*, the Court of Appeals noted that interest in this type of case could be claimed only as "compensation allowed by law for the use . . . of money." *Id.* at 365. Specifically, the court said:

> Phillips has done the Adams family no wrong, so that the Adamses cannot claim interest as an item of damages, nor does this case fall within the statutory rubric of 'forbearance or detention' of money. Consequently, the Ad-

ams family can claim interest only as 'compensation allowed by law for the use . . . of money.' 513 F.2d at 365.

From this, it is plain that prejudgment interest is not awarded in this type of case as a "punitive" measure. Rather, the award is discretionary, as is evidenced by the following statements of the Court of Appeals:

> A reading of all the relevant Texas cases convinces us that interest is awarded or refused in that jurisdiction only after a careful consideration of all the circumstances in the particular case, and that the Texas interest statute is sufficiently flexible to permit courts to do equity. * * *

> Since we have concluded that the Texas statute does not preclude the award of interest to the Adams family, we now turn to the more difficult problem of whether interest ought to be awarded in the context of the facts in the case at bar. * * * 513 F.2d at 366.

After determining that there were no parallel cases in the Texas law, the Court of Appeals laid down the underpinning for the rule that would serve as a future guide to the courts, saying:

> [T]his case presents a factual situation to which there are no close parallels in the Texas case law. We must decide whether it is better that one party (Phillips) should have the right to the possession of the principal sum, but not to the income, and that another party (the Adams family) should have the right to the income even though it had no right to possession of the principal during the accumulation of the income, *or* that a party (Phillips) which at no time had any claim to ownership of the principal sum should enjoy the income thereof. We believe that the former rule is the more equitable one, not because Phillips has done anything wrong, but because Phillips ought not to be able to use someone else's money as it pleased for ten years thereby enjoying a very considerable benefit, and then pay nothing for the use of the money. The *Nicholson* [*City of El Paso v. Nicholson,* Tex.Civ.App.1962, 361 S.W.2d 415], *Kishi* [*Kishi v. Humble Oil & Refining Co.,* 5 Cir. 1926, 10 F.2d 356] and *Brooklyn Union Gas* [*Brooklyn Union Gas Co. v. Transcontinental Gas Pipe Line Co.,* S.D.Tex.1960, 201 F.Supp. 679] cases illustrate the elemental equitable principal upon which we base our award of interest to the Adams family. 513 F.2d at 368.

Having established that interest could and should be awarded, the appellate court distilled the essence of their rule into this thought:

> * * * [W]e conclude that Phillips is liable for interest for the period in which it enjoyed a reasonably free use of the money, * * *. 513 F.2d at 369.

During its discussion of the interest question, the court in *Adams* also noted, and apparently sanctioned (thus encouraged) the use of Indemnity Agreements whereunder the suspense money so-called is paid out (subject to refund, of course) prior to final FPC action. Specifically, in footnote 10, the court said:

> 10. We note that Phillips does not always hold suspense money in its own accounts until the FPC approves or disapproves the underlying rate increases. The record contains two form letters from Phillips, one written to Etchieson of the Schnell group, dated February 20, 1968, and the other written to the Adams Family with regard to another piece of property, dated August 13, 1971 [Px. 8], in which Phillips (apparently at the request of Etchieson and the Adams family) agreed to pay suspense money to the addresses *as it was collected,* on the condition that they would agree to reimburse Phillips, with interest, for any suspense money which the FPC might require Phillips to refund to its customers. The approach adopted by Phillips in those instances would obviate the difficulties presented by this case. 513 F.2d at 632 (emphasis by Court)

Particularly, the Court's attention is attracted to those words "this approach adopted by Phillips in those instances would obviate the difficulties presented in this case" which appear in the quote above. In the same opinion, the appellate court says:

> * * * This money was not placed in an escrow account, nor was it paid to the suppliers as it accumulated, subject to refund, with interest—a course of action followed by Phillips in other instances. See n. 10, *supra.* 513 F.2d at 366.

From what has been said above, the Court concludes that inasmuch as Phillips offered to pay-out the suspense money so-called to Day and Pensco prior to final FPC action (subject to refund, of course), such offer to pay-out constitutes a loss of the "reasonably free use" of the money by Phillips, and Phillips' liability ceases as of the offer date. Under the authority in *Adams, supra.*

Moreover, in *Adams* the Court of Appeals held that Phillips' interest liability terminated as of the date that Phillips made the unconditional tender of the funds into the court registry, even though the funds were not actually paid until some months afterward. The rationale of the *Adams* court was that "once a stakeholder makes an unconditional offer to give up possession of a disputed fund, it ceases to exert that dominion over the money sufficient to justify an obligation to pay interest thereon . . . ." *Adams, supra,* at 370. In this respect the facts of this case with respect to Phillips' offer to pay the money out under the indemnity agreement are almost identical with Phillips' offer, in *Adams,* to pay the money into the registry of the Court. The facts being essentially the same, there is no reason for a different rule to be obtained. Thus, this Court can say that by offering to put the money out under an indemnity agreement, Phillips "ceases to exert that dominion over the money sufficient to justify an obligation to pay interest thereon." 513 F.2d at 370. Such a situation exists in this case,

and "consistent with *Adams,* this Court, on this remand, properly must terminate Phillips' interest liability as of the dates of the indemnity agreements which were the offer dates.

Accordingly, a judgment will be entered awarding Day and Pensco, and requiring Phillips to pay to Day interest in the sum of $7,968.85, and requiring Phillips to pay to Pensco interest in the sum of $6,578.22, both of which sums are the stipulated amount of interest on the "sustainable" money from the date of receipt of same by Phillips to the date of the respective indemnity agreements.

## VIII.

Finally, this Court is of the opinion that the Travis Group, Day and Pensco are not entitled to recover pre-judgment interest from and after March 11, 1974, the date of this Court's first judgment.

■■ When a federal court is sitting in a diversity case, the matter of interest on judgments is controlled by the law of the state in which the federal court is sitting. *Texaco, Inc., v. Lirette,* 410 F.2d 1064, 1067 (5th Cir. 1969). In Texas, the right to post-judgment interest is provided by Statute, Tex.Civ.Stat.Ann., art. 5069–1.05. In addition, Texas decisional law provides that post-judgment interest should be computed from the time a trial court erroneously enters a judgment, *D. C. Hall Transport, Inc. v. Hard,* 355 S. W.2d 257, 260 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n. r. e.); and *Nederlandsch-Amerikaansche, etc. v. Vassallo,* 365 S.W.2d 650, 656 (Tex.Civ.App.—Houston 1963, writ ref'd n. r. e.). It is on this basis that the defendants contend that their awards of interest ought to bear interest at the rate of 6% from the time of this Court's earlier opinion. Phillips has suggested two theories, both good, upon which this Court can, and must deny the defendants' claim in this case for interest from and after March 11, 1974, and to the date of the judgment in the trial on remand.

First, the instruction to this Court from the Court of Appeals is that "Phillips need not pay interest for the period

subsequent to March 12, 1973." 513 F.2d at 375. In view of this language, this Court cannot say that the Court of Appeals has not met the requirement of Rule 37, Fed.R.App.P., which provides that "if a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest." In view of the definitiveness of the Court of Appeals' statement, we need not consider Phillips' suggestion that the absence of an instruction allowing an award of post-judgment interest on a reversed opinion has the same operational effect as an instruction that no post-judgment interest is to be awarded.

■ Second, there can be no doubt about the fact that this Court is without the power or authority to award interest in this case for the period between the date of its earlier judgment and the judgment in this trial on remand, in the absence of a reform of the mandate. See *Briggs v. Pennsylvania Railroad Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403, 1405 (1948); and *Givens v. Missouri-Kansas Texas R. Co. of Texas,* 196 F.2d 905 (5th Cir. 1952). In the *Briggs,* case, *supra,* the Supreme Court said:

> * * * The [Appellate] court's mandate made no provision for such [post-judgment] interest and the trial court had no power to enter judgment on an amount different than directed. If any enlargement of that amount were possible, it could be done only by amendment of the mandate. 334 U.S. at 306, 68 S.Ct. at 1040, 92 L.Ed. at 1405.

In this case the defendants filed a motion to reform the mandate but the same was denied. Thus, this Court must take the mandate as it finds it and, while it can be said to contain language that specifically denies the defendants' claim on this point, it certainly does not contain an authorization for interest from and after the earlier erroneous judgment.

### IX.

■ While the defendants are not entitled to recover post-judgment interest dated back to the court's earlier opinion, they are entitled to recover, interest on the money judgment awarded in this trial on remand, 28 U.S.C. § 1961. Such interest shall be calculated from the date of the entry of the judgment on the trial of the remand, and at a rate of nine (9) percent per annum which is the rate allowed under Texas law. 28 U.S.C. § 1961; and Tex.Civ.Stat.Ann., art. 5069–1.05 (1975).

### X.

Costs are assessed against Phillips.

The Clerk will furnish a copy hereof to each attorney.

The attorneys will confer and prepare the appropriate judgment in accordance with the above rulings, approve it as to form, and submit it to the Court for signature.